A06A0014. COTTEN et al. v. PHILLIPS et al.

(633 SE2d 655)

MIKELL, Judge.

In this medical malpractice action, Herman R. Phillips and Mattie L. Phillips sued Bennett D. Cotten, Jr., M.D., an orthopedic surgeon, and his practice group, Southwest Georgia Orthopedic & Sports Medicine Center, Inc., alleging that Dr. Cotten committed malpractice in the course of treating Mr. Phillips for pain and arthritis in his left knee.[1] Appellees filed with their complaint the affidavit of Dr. Horst Filtzer, a vascular surgeon. Appellants filed a motion in limine to exclude the testimony of Dr. Filtzer, arguing that he was not competent to testify against Dr. Cotten under the new statute governing expert witness testimony in civil actions, OCGA

---

[1] Phillips also sued Odeane C. Brown, M.D., Phoebe Specialty Medical Group, and Phoebe Putney Memorial Hospital, Inc., but they are not parties to this appeal.

§ 24-9-67.1, because he was not an orthopedic surgeon. The trial court denied the motion in limine but granted appellants a certificate of immediate review. We granted appellants' application for interlocutory appeal. For the reasons outlined below, we affirm the trial court's ruling.

The record shows that on October 21, 1999, Dr. Cotten performed total knee replacement surgery on Phillips's left knee. On November 1, 1999, Dr. Cotten discovered that Phillips had developed an acute vascular problem. Dr. Charles Holley, a vascular surgeon, was consulted. On November 1, Dr. Holley performed a femoral arteriogram, which showed that Phillips had an abrupt occlusion of the popliteal artery at "above the level of his knee," meaning that there was no blood flow in the artery below the occlusion. On that same day, Dr. Holley performed a revascularization and bypass on Phillips's left leg to attempt to restore his blood flow. The surgery was unsuccessful. On November 3, Dr. Holley performed a guillotine amputation of the ankle because Phillips had a "dead left foot," and six days later on November 9, Dr. Holley amputated the remainder of Phillips's left leg below the knee. Dr. Holley opined that the occlusion was caused by peripheral vascular disease ("PVD"), not an intraoperative injury to the artery.

In his affidavit in support of Phillips's complaint, Dr. Filtzer opined that Dr. Cotten was negligent in failing (1) to conduct a pre-operative vascular circulation assessment to confirm the presence of circulation; (2) in the alternative, to obtain a pre-operative consultation from a vascular surgeon prior to the performance of the knee replacement surgery; and (3) to timely monitor and respond to foot drop occurring in Phillips and recognize and respond to the vascular compromise in Phillips's lower left leg. Dr. Filtzer asserted that Dr. Cotten's deviations from the usual accepted standard of care resulted in the below-the-knee leg amputation. In his deposition, Dr. Filtzer testified that in light of Phillips's age, 70, his history of high blood pressure, hyperlipidemia, and heart attack, and the fact that he only had one kidney, an objective assessment of the circulation in his lower extremities was required; that there were indications in the medical record of problems with Phillips's foot from the moment he left the operating room, but nothing was done until November 1, when Dr. Holley was consulted; and that the stiffness in Phillips's toe indicated vascularization problems, not a peroneal nerve injury often seen with foot drop, which causes the symptom of a floppy foot.

Dr. David Adcock, an orthopedic surgeon, and Dr. James Elsey, a vascular surgeon, have provided deposition testimony in favor of the appellants. Dr. Adcock testified that before the surgery, Dr. Cotten evaluated Phillips for pulses in his extremities, which are indicative of blood flow; that Phillips had PVD, a disease resulting from the

narrowing of the arteries; that Phillips had PVD in his popliteal artery; and that the amputation was necessitated by an occlusion in Phillips's popliteal artery. Dr. Elsey testified that as a vascular surgeon, he is often consulted by orthopedists contemplating a surgical procedure to determine if a patient has PVD and whether the patient can tolerate the procedure; that in cases involving total knee replacements, he would evaluate whether the patient had good circulation to the lower extremity; and that Phillips did not have significant PVD.

Dr. Cotten and his practice group moved to exclude Dr. Filtzer's testimony on the grounds that as a vascular surgeon, he was not qualified under OCGA § 24-9-67.1 to give an expert opinion as to the conduct of an orthopedic surgeon. The statute provides, in pertinent part:

Notwithstanding ... in professional malpractice actions, the opinions of an expert, who is otherwise qualified as to the acceptable standard of conduct of the professional whose conduct is at issue, shall be admissible only if, at the time the act or omission is alleged to have occurred, such expert: (1) Was licensed by an appropriate regulatory agency to practice his or her profession in the state in which such expert was practicing or teaching in the profession at such time; and (2) In the case of a medical malpractice action, had actual professional knowledge and experience *in the area of practice or specialty in which the opinion is to be given* as the result of having been regularly engaged in: (A) The active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue; or (B) The teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or

render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue.[2]

The trial court denied the motion and admitted Dr. Filtzer's testimony, finding the statutory language "in which the opinion is to be given" critical to its resolution of the case.[3] It reasoned that

> this . . . language reveals that the law simply requires that an expert have actual professional knowledge and experience in the area of practice/specialty in which his expert opinion is to be given. It appears that the legislature has allowed for an overlap in specialties, whereby an otherwise qualified medical doctor belonging to "Specialty A" can render an opinion about the acts or omissions of another medical doctor belonging to "Specialty B" — so long as the opinion of the expert witness belonging to "Specialty A" pertains to Specialty A. . . . In the instant case, . . . "the area of practice in which the opinion is to be given" is vascular surgery — Dr. Filtzer's specialty — *not* orthopedics — Dr. Cotten's specialty. Accordingly, because Dr. Filtzer is a licensed vascular surgeon who is qualified to give an opinion on the vascular issues in this case, he clearly has the requisite "knowledge and experience in the area in which his opinion is given" necessary to satisfy the statute.

The issue of the admissibility or exclusion of expert testimony rests in the broad discretion of the court, and consequently, the trial court's ruling thereon cannot be reversed absent an abuse of discretion.[4] We find no such abuse.

Appellants argue that the trial court misconstrued the statute. The cardinal rule of statutory construction is to ascertain the intent of the legislature.[5] Section 1 of Senate Bill 3 sets forth the legislature's intent in enacting the statute:

> The General Assembly finds that there presently exists a crisis affecting the provision and quality of health care

---

[2] (Emphasis supplied.) OCGA § 24-9-67.1 (c) (1), (2).

[3] The trial court first determined that it need not reach the issue of whether the statute would be unconstitutional as applied to this case; however the court noted that two other trial courts had found the statute unconstitutional as applied to the facts of cases pending before the courts because it denied the plaintiffs due process of law and barred their meaningful access to the courts.

[4] *Smith v. Hosp. Auth. of Terrell County*, 161 Ga. App. 657, 659 (2) (288 SE2d 715) (1982).

[5] *Printis v. Bankers Life Ins. Co.*, 256 Ga. App. 266, 267 (568 SE2d 85) (2002).

services in this state. Hospitals and other health care providers in this state are having increasing difficulty in locating liability insurance and, when such hospitals and providers are able to locate such insurance, the insurance is extremely costly. The result of this crisis is the potential for a diminution of the availability of access to health care services and a resulting adverse impact on the health and well-being of the citizens of this state. The General Assembly further finds that certain civil justice and health care regulatory reforms as provided in this Act will promote predictability and improvement in the provision of quality health care services and the resolution of health care liability claims and will thereby assist in promoting the provision of health care liability insurance by insurance providers.[6]

By concluding that an expert must have knowledge and experience in the area of practice or specialty about which he is providing testimony, the trial court's ruling comports with the legislative intent of the statute.

Our Supreme Court has stated that

[a]lthough the legislative intent prevails over the literal import of words, where a constitutional provision or statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms. In other words the language being plain, and not leading to absurd or wholly impracticable consequences, it is the sole evidence of the ultimate legislative intent.[7]

In other words, the plain meaning of the statute conveys best the legislative intent therefor. Here, the statute expressly provides that the expert must have "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given."[8] Therefore, the trial court's interpretation of the statute also comports with its plain meaning. Had the General Assembly intended that only experts in the same area of practice/specialty as the defendant doctor

---

[6] Ga. L. 2005, pp. 1-2, Act 1, § 1.

[7] (Citations and punctuation omitted.) *Hollowell v. Jove*, 247 Ga. 678, 681 (279 SE2d 430) (1981).

[8] OCGA § 24-9-67.1 (c) (2).

be deemed qualified to provide expert testimony against those doctors,[9] it could have plainly done so, as have legislatures in other states.[10]

In our construction of statutes, we are also required "to avoid a construction that makes some language mere surplusage."[11] The trial court's interpretation of the statute complies with that rule as well. If we construe the statute to exclude expert witnesses other than those having the same specialty or area of practice as the defendant doctor, many of the phrases used therein would become meaningless. For example, in subsection (c) (2), the statute requires the trial judge to determine whether the expert has knowledge or experience in the area of practice or specialty by having been regularly engaged in "the active practice of such area of specialty *of his or her profession*" or the teaching "*of his or her profession.*" Had the legislature intended to require that plaintiff's experts and defendant doctors share the same specialty, that language would not be required. The language contemplates that the expert may very well have a different area of practice than the defendant doctor. Under the statute, it is the expert's qualifications, rather than the defendant doctor's specialty or area of practice, that controls whether the trial court should allow the expert's testimony.

Moreover, the legislature also expressed its intent in subsection (f) of the statute.

---

[9] House Floor Amendment 4 to the statute, which required that expert witnesses and defendant doctors have the same specialty, was rejected by a vote of 134 to 38. That amendment provided, in pertinent part, that

> [i]f the health care provider against whom or on whose behalf the testimony is offered is a specialist, the expert witness must . . . [s]pecialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients.

See www.legis.ga.gov/legis/2005_06/sum/sb3.htm.

[10] See Ala. Code § 6-5-548 (b) (1996) (if defendant doctor is not a specialist, expert witness must be trained and experienced in the "same discipline or school of practice," and if defendant doctor is a specialist, expert must have been trained and experienced in the same specialty); Ark. Code Ann. § 16-114-206 (a) (1) (1987) (plaintiff shall prove medical negligence by means of expert testimony provided only by a medical care provider of the "same specialty" as the defendant); Conn. Gen. Stat. § 52-184c (2006) (same as Alabama but trial court may allow testimony of expert from another discipline who proves to possess sufficient training, experience, and knowledge as a result of practice or teaching in a related field); Fla. Stat. Ann. § 766.102 (2006) (same as Alabama); Mich. Comp. Laws Svc. § 600.2169 (1) (a) (1961) (expert witness must specialize in same specialty); Ohio Rev. Code Ann. § 2743.43 (A) (3) (2006) (expert witness must specialize in same or substantially similar specialty).

[11] (Citations and punctuation omitted.) *Metzger v. Americredit Financial Svcs.*, 273 Ga. App. 453, 454 (615 SE2d 120) (2005); OCGA § 1-3-1 (b).

It is the intent of the legislature that, in all civil cases, the courts of the State of Georgia not be viewed as open to expert evidence that would not be admissible in other states. Therefore, in interpreting and applying this Code section, the courts of this state may draw from the opinions of the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U. S. 579 [(113 SC 2786, 125 LE2d 469)] (1993); *General Electric Co. v. Joiner*, 522 U. S. 136 [(118 SC 512, 139 LE2d 508)] (1997); *Kumho Tire Co. Ltd. v. Carmichael*, 526 U. S. 137 [(119 SC 1167, 143 LE2d 238)] (1999); and other cases in federal courts applying the standards announced by the United States Supreme Court in these cases.[12]

Under *Daubert*, "[e]xpert testimony is only admissible if it is both: (1) relevant and (2) reliable[,]"[13] and "[a]n expert opinion is 'relevant' if it 'will assist the trier of fact to understand the evidence or to determine a fact in issue.' "[14] Federal courts applying *Daubert* have held that it does not require particular credentials for an expert witness.[15] Furthermore, under *Daubert*, disputes as to an expert's credentials are properly explored through cross-examination at trial and go to the weight and credibility of the testimony, not its admissibility.[16] In *Dickenson v. Cardiac & Thoracic Surgery of Eastern Tenn.*,[17] the Sixth Circuit stated that "*Daubert*'s role of ensuring that the courtroom door remains closed to junk science is not served by excluding testimony such as [this expert's] that is supported by extensive relevant experience. Such exclusion is rarely justified in cases involving medical experts as opposed to supposed experts in the area of product liability."[18]

Constant in *Daubert* and cases applying the standards set forth therein is the theme that the trial court is the gatekeeper of expert testimony.[19] In the instant case, the statute is consistent with this

---

[12] OCGA § 24-9-67.1 (f).

[13] *Henry v. Champlain Enterprises*, 288 FSupp.2d 202, 220 (IV) (B) (1) (N.D. N.Y. 2003), citing *Daubert*, supra at 589 (II) (B); Fed. R. Evid. 702.

[14] (Citation omitted.) *Henry*, supra, citing *Daubert*, supra at 591 (II) (B).

[15] See *Tuf Racing Products v. American Suzuki Motor Corp.*, 223 F3d 585, 591 (7th Cir. 2000). Accord *Erickson v. Baxter Healthcare*, 151 FSupp.2d 952, 964 (IV) (B) (N.D. Ill. 2001).

[16] See *New York v. Solvent Chem. Co.*, 225 FSupp.2d 270, 285 (III) (E) (1) (W.D. N.Y. 2002). See also *Daubert*, supra at 596 (III).

[17] 388 F3d 976 (6th Cir. 2004) (held that the lower court abused its discretion when it did not allow a cardiologist to testify against a pulmonologist where the cardiologist was qualified on the basis of his experience).

[18] (Citations and punctuation omitted.) Id. at 982 (II) (B).

[19] *McDowell v. Brown*, 392 F3d 1283, 1298 (IV) (11th Cir. 2004) ("In *Daubert*[, supra], the

theme in that it gives the trial judge the discretion to determine whether the purported expert has the appropriate level of knowledge and experience, through active practice or teaching, in the area of practice or specialty in which the opinion is to be given.[20]

As stated earlier, it is a longstanding rule in Georgia that the trial judge's decision in this regard can be reversed only where the judge manifestly abused his discretion.[21] It does not appear from the evidence in the record that Phillips ever alleged that Cotten was negligent in his performance of the total knee replacement surgery, only in his failure to assess the vascular issues involved, particularly in light of Phillips's medical history. Therefore, the evidence in the record supports the trial court's determination that the area of practice in which the opinion is to be given is vascular surgery, which was Dr. Filtzer's specialty, and that Dr. Filtzer was qualified to give an opinion in that area. Consequently, we find that the trial court did not abuse its discretion when it admitted Dr. Filtzer's testimony.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED JULY 6, 2006 — ▮▮▮▮▮▮▮▮▮

*McCall, Phillips & Williams, W. Earl McCall, Alex J. Kaplan*, for appellants.

*Devlin & Robinson, Chrisna D. Jones, Earnest Redwine, Annette D. Brown*, for appellees.

*Huff, Powell & Bailey, Daniel J. Huff, Taylor, Harp, Callier & Morgan, Jefferson C. Callier*, amici curiae.

United States Supreme Court impressed a gatekeeping role upon judges, and directed them to ensure that any and all scientific testimony or evidence is not only relevant, but reliable.") (citation and punctuation omitted). *Daubert*, supra at 589; *Pipitone v. Biomatrix, Inc.*, 288 F3d 239, 250 (II) (C) (5th Cir. 2002); *Dodge v. Cotter Corp.*, 203 F3d 1190, 1200 (IV), n. 12 (10th Cir. 2000).

[20] See OCGA § 24-9-67.1 (c) (2).

[21] *Smith*, supra; *Rouse v. Fussell*, 106 Ga. App. 259, 262 (4) (126 SE2d 830) (1962); *Whatley v. Henry*, 65 Ga. App. 668, 681 (7) (16 SE2d 214) (1941).