A08A1728. GIANNOTTI et al. v. BELEZA HAIR SALON,
INC. et al.
(675 SE2d 544)

MILLER, Chief Judge.

Hollie Giannotti ("Giannotti") and her husband, Darrell Giannotti, filed suit against Beleza Hair Salon, Inc. d/b/a Beleza Salon and

---

[3] *Kinard v. Worldcom, Inc.*, 244 Ga. App. 614, 617 (536 SE2d 536) (2000).

Eunice Kai Amaral-Marrs ("Appellees") for personal injury and loss of consortium, alleging that Amaral-Marrs negligently performed hair coloring procedures on Giannotti, causing Giannotti to sustain chemical burns. Following trial, the jury returned a verdict for Appellees. The Giannottis appeal from the trial court's final judgment on the jury verdict, arguing that the trial court erred by (1) granting Appellees' motion to exclude the testimony of the Giannottis' expert in chemistry; (2) precluding the Giannottis' expert in cosmetology from offering an opinion as to whether Appellees breached a standard of care; and (3) failing to instruct the jury on res ipsa loquitur. Discerning no error, we affirm.

Viewed in the light most favorable to the jury's verdict (*Vega v. La Movida, Inc.*, 294 Ga. App. 311 (670 SE2d 116) (2008)), the record shows that Giannotti is a licensed cosmetologist and knew Amaral-Marrs because both women formerly worked at the same hair salon. When Giannotti left the salon, she chose Amaral-Marrs as her stylist because she thought Amaral-Marrs did a good job. For a period of approximately five years, Giannotti saw Amaral-Marrs regularly.

On February 2, 2004, Giannotti decided to apply coloring products to her hair at home because her roots were starting to show. Giannotti applied an "all-over" color product to the roots in her "T-Section," i.e., the sides and front of the hair. Giannotti's attempt to color her roots turned her hair a brassy color, and several days later, Giannotti attempted to correct the situation by giving herself some highlights.

Thereafter, Giannotti made an appointment with Amaral-Marrs for February 16, 2004 to have her hair cut and colored. Giannotti told Amaral-Marrs that she had applied coloring products at home. Amaral-Marrs decided that her first step would be to highlight the back of Giannotti's head because the back only needed highlights while the front needed highlights and lowlights. Amaral-Marrs prepared a paste comprised of a Goldwell Oxycur Platin, a Redken Clear EQ Shades Color Gloss, and a peroxide made either by Redken or Goldwell. Amaral-Marrs testified that she did not measure the products, explaining that she was taught in school that it was important to look for the correct consistency in the mixture. Amaral-Marrs placed the paste into foils that she folded into Giannotti's hair from the neck to the crown.

Once the foils were in place, Amaral-Marrs put Giannotti under a hooded hair dryer for approximately five or six minutes. At that point, Amaral-Marrs checked one or two of the foils and then put the dryer back down. When the heat reached her head, Giannotti experienced severe pain. When Giannotti told Amaral-Marrs that her head was burning, Amaral-Marrs immediately rinsed Giannotti's hair with cold water. Amaral-Marrs also gave Giannotti a cooling

638

conditioner to apply to the affected area. Amaral-Marrs then proceeded to color the front of Giannotti's head and to cut and style Giannotti's hair. When Amaral-Marrs combed the back of Giannotti's head, Giannotti noticed long pieces of hair breaking off.

Later that day, Giannotti was still in pain, and redness was visible on her scalp. Over the next week, the pain intensified. While Giannotti was taking a shower the following Sunday, a chunk of hair came loose. The next morning, Giannotti saw a dermatologist. The doctor performed a culture of her wound, which revealed that Giannotti had developed a bacterial infection. Giannotti was referred to a rehabilitation center, where she received wound care through March 29, 2004. Following her treatment, Giannotti was left with a bald spot, which she later attempted to cover by undergoing scar revision surgery.

This case proceeded to trial in December 2007. On the first day of trial, Appellees filed a motion in limine to exclude Richard Brown, the Giannottis' expert in chemistry, or, in the alternative, to preclude him from testifying about the effects of chemicals on human skin or hair. After hearing argument from counsel, the trial court initially stated that it would grant the motion but subsequently decided to reserve its ruling until Brown could be voir dired. After hearing Brown's testimony, the trial court ruled that Brown could not testify as an expert witness.

The Giannottis called Brenda Lynda Patterson as an expert in cosmetology. Patterson was permitted to testify that the standard of care for cosmetologists includes reading and following the manufacturer's directions for chemical products. After showing Patterson a copy of the instructions for Platin lightening powder, the Giannottis' counsel twice attempted to ask Patterson whether it would violate the standard of care to apply heat when the product instructions state that additional heat sources are not required. The trial court, however, sustained Appellees' counsel's objections to the question.

1. The Giannottis claim that the trial court erred in precluding Brown from testifying as an expert at trial altogether and, further, that Appellees' motion in limine should have been denied as untimely. We disagree.

(a) *Admissibility of Brown's testimony.* OCGA § 24-9-67.1, which governs the admissibility of expert testimony, provides, in relevant part:

. . .

(b) If scientific, technical, or other specialized knowledge will assist the trier of fact in any cause of action to understand the evidence or to determine a fact in issue, a

YALE LAW LIBRARY

witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if:

. . .

(2) The testimony is the product of reliable principles and methods; and

(3) The witness has applied the principles and methods reliably to the facts of the case.

OCGA § 24-9-67.1 (b). "The . . . admissibility or exclusion of expert testimony rests in the broad discretion of the [trial] court. . . ." (Footnote omitted.) *Cotten v. Phillips*, 280 Ga. App. 280, 283 (633 SE2d 655) (2006). We find no abuse of discretion here.

Brown holds a masters degree in forensic chemistry and, at the time of trial, was employed as a forensic microscopist. Brown's company was engaged primarily in identifying the chemical components of various materials and identifying the materials' sources. Brown did not devote significant time to studying toxicology as an undergraduate or in graduate school; he has not published any articles relating to the health effects of chemicals on humans or human hair since 1986, when he published an article on detecting illicit drugs in blood and urine; and as a forensic chemist, he has not made any presentations on the health effects of chemicals on humans or human hair. Given these facts, established during voir dire, the Giannottis' counsel offered to stipulate that Brown was not a toxicologist and would not offer toxicological opinions. Likewise, on appeal, the Giannottis concede that the trial court did not err in refusing to qualify Brown as a toxicologist and in excluding him from giving opinions regarding the effect of chemicals on human hair and skin.

The Giannottis claim, however, that Brown should have been allowed to testify on the "identification and characteristics of the hair coloring products" and "the observed interactions" of chemicals in laboratory tests conducted by Brown. Brown tested certain hair coloring products by mixing them together to form a paste or cream, putting the mixture on a glass slide, and heating the slide on a hot stage to between 110 and 120 degrees Fahrenheit.[1] Brown admitted that he had not precisely replicated the paste or cream Amaral-Marrs used on Giannotti's hair but explained that this was because Amaral-Marrs had not testified about the exact ratio of ingredients.

---

[1] A hot stage is a ceramic slide with a thin metal film that is heated by adding voltage.

YALE LAW LIBRARY

Brown further admitted, however, that prior to his deposition, he did not perform any tests using a 20 volume peroxide although Amaral-Marrs had testified that she used 20 volume peroxide on Giannotti's hair. He also used a brand of peroxide that Amaral-Marrs testified that she did not use. Brown also admitted that the reaction of chemicals to hot air versus direct heat, such as that supplied by a hot stage, could be "slightly different." According to Brown, his testing showed that without the presence of heat, the reactions between the chemicals in the products progressed slowly, but once heat was added, the rate of reaction increased vigorously. Brown claimed this reaction demonstrated a mechanism by which the chemicals could have reached Giannotti's scalp.

The record does not establish that Brown utilized reliable principles and methods to test the hair products or that he applied his principles and methods reliably to the facts of the case. He conducted no tests related to the effect of hair products on human hair or skin. The tests he conducted involved a peroxide product that was not applied to Giannotti's hair, and he used a different type of heat source. Brown's testimony, moreover, failed to establish that he heated the hair product mixture to the same temperature it would have reached on Giannotti's head or that he applied heat for the same amount of time. In view of such facts, the trial court did not abuse its discretion in excluding Brown's testimony. See *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 279 (5) (658 SE2d 603) (2008) (trial court did not abuse discretion in excluding experts based on finding that their testimony was not shown to be "the product of reliable principles and methods").

(b) *Timeliness of motion in limine.* OCGA § 24-9-67.1 (d) provides:

> Upon motion of a party, the court may hold a pretrial hearing to determine whether the witness qualifies as an expert and whether the expert's testimony satisfies the requirements of subsections (a) and (b) of this Code section. Such hearing and ruling shall be completed no later than the final pretrial conference contemplated under Code Section 9-11-16.

See also *Ford Motor Co. v. Gibson*, 283 Ga. 398, 404 (5) (659 SE2d 346) (2008) (trial court did not err in denying motion to exclude expert testimony when time period within which defendant was entitled to hearing and ruling on its motion had passed); *Bailey v. Edmundson*, 280 Ga. 528, 533 (5) (630 SE2d 396) (2006). Appellees acknowledged in their motion in limine that the motion had not been filed within the time frame contemplated by OCGA § 24-9-67.1 (d),

but argued that their motion should be considered because the Giannottis first made Brown available for deposition just one week before trial.

The record shows that on April 1, 2005, Appellees served interrogatories on the Giannottis requesting the identification of their experts and a statement of the experts' opinions, but the Giannottis did not identify Brown as an expert until August 29, 2007. Upon learning that Brown might be called as a witness at trial, Appellees' counsel immediately wrote to the Giannottis' counsel requesting dates for Brown's deposition. In the ensuing weeks, Appellees continued to attempt to secure a date to depose Brown, but Brown's deposition was not scheduled until Appellees filed a motion to exclude Brown's testimony as a discovery sanction.

Under the circumstances, we find no manifest abuse of discretion in the trial court's decision to entertain Appellees' motion in limine despite the Giannottis' reliance on the deadline in OCGA § 24-9-67.1 (d). See *Cotten*, supra, 280 Ga. App. at 287; compare *Airasian v. Shaak*, 289 Ga. App. 540, 543 (2) (657 SE2d 600) (2008) (holding that trial court did not abuse discretion in admitting expert testimony when appellant failed to seek timely ruling on admissibility under OCGA § 24-9-67.1 (d) but noting that depositions of challenged experts were taken a year and a half prior to pretrial order); *Ambling Mgmt. Co. v. Purdy*, 283 Ga. App. 21, 27 (2) (640 SE2d 620) (2006) ("Because [defendant] failed to timely challenge the expert evidence under OCGA § 24-9-67.1 . . . and has failed to show that its untimeliness was justified, we find no reversible error" in failing to exclude experts) (experts identified in plaintiff's complaint over three years prior to trial). Even if the trial court had declined to consider Appellees' motion in limine, moreover, it could have exercised its discretion to entertain and sustain Appellees' objections to Brown's testimony when the Giannottis called Brown to testify. See *Ga. Dept. of Transp. v. Baldwin*, 292 Ga. App. 816, 818 (1), n. 3 (665 SE2d 898) (2008).

2. The Giannottis argue that the trial court erred by precluding Patterson from offering an opinion as to whether it would violate the standard of care for a cosmetologist to apply heat when the product instructions state that additional heat sources are not required. We disagree.

"Expert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the layman." (Punctuation and footnote omitted.) *Purcell v. Kelley*, 286 Ga. App. 117, 118 (1) (648 SE2d 454) (2007) (trial court erred in allowing police officer to testify that, based on witness statements, he had

determined that traffic light was red because that was an issue average jurors could decide for themselves). Here, Patterson was permitted to testify that the standard of care for cosmetologists required them to read and follow product directions. The trial court did not abuse its discretion, however, when it refused to let Patterson testify further about whether it would violate the standard of care to apply heat when the instructions provide that additional heat sources are not required. Answering that question would have required Patterson to interpret the instructions and explain whether, in her opinion, a statement that additional heat sources are not required means that additional heat sources should not be used. The proper interpretation of the product instructions was not an issue beyond the ken of laypersons, and the jurors were capable of deciding for themselves whether Amaral-Marrs failed to follow product instructions.

3. Finally, the Giannottis argue that the trial court erred in failing to give the jury an instruction they requested on the doctrine of res ipsa loquitur. The Giannottis' requests to charge, however, are not included in the record on appeal, and we are unable to examine the language of the proposed charge. As such, the claim of error is waived. *Mitchell v. State*, 255 Ga. App. 585, 591 (6) (565 SE2d 889) (2002).

Even if the claim of error had not been waived, we would reject it.

> Res ipsa loquitur is a rule of evidence to be applied in cases where there is no evidence of consequence showing negligence on the part of the defendant. The doctrine authorizes, but does not require, the jury to infer facts from the circumstances in which the injury occurred, thereby filling the evidentiary gap. . . . Res ipsa loquitur is authorized where (1) the injury is of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Aderhold v. Lowe's Home Centers*, 284 Ga. App. 294, 295 (643 SE2d 811) (2007); *Kmart Corp. v. Larsen*, 240 Ga. App. 351, 352 (522 SE2d 763) (1999). Assuming the Giannottis could establish the first two elements, they cannot establish the third. The record shows that approximately two weeks prior to her hair appointment, Giannotti, a licensed cosmetologist, applied two different coloring products to her hair. Such evidence raised the possibility that the products Giannotti

used could have contributed to the injury she sustained. *Smith v. U-Haul Co.*, 225 Ga. App. 356, 357 (2) (484 SE2d 49) (1997) (trial court correctly concluded that res ipsa loquitur was inapplicable where, inter alia, there were issues of contributory negligence). Because the doctrine was inapplicable, the trial court did not err in failing to instruct the jury on res ipsa loquitur. *Simonds v. Conair Corp.*, 185 Ga. App. 664, 665 (3) (365 SE2d 507) (1988).

For the reasons set forth above, we affirm the trial court's judgment on the jury's verdict in favor of Appellees.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED MARCH 16, 2009.

*Andrew C. Desautel*, for appellants.
*Sharon E. Andrews*, for appellees.