**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS, P. J., and BOGGS, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 5, 2013**

# In the Court of Appeals of Georgia

A12A1790. AGUILAR et al. v. CHILDREN'S HEALTHCARE OF ATLANTA, INC. et al.

ANDREWS, Presiding Judge.

Janaly Aguilar appeals after the trial court granted Children's Healthcare's and Dr. Joseph Schultz's motions to dismiss this medical malpractice suit. Aguilar alleged that her ten-month-old son Jonathon died as a result of the improper insertion of an intubation tube. The trial court granted the motions to dismiss, holding that the doctor who submitted the expert affidavit was not qualified because he was not regularly engaged in the active practice of emergency pediatric medicine, the subject specialty, for three to five years prior to the alleged negligence. We agree and affirm.

The pleadings show that Jonathon was having difficulty breathing and was suffering with abdominal pain, vomiting, and diarrhea when Aguilar brought him to

the hospital's emergency room. Jonathon was intubated to help with his breathing. According to the complaint, the intubation tube was not properly secured and "slid into the right mainstem bronchus." Aguilar also alleged that the intubation tube remained there for 23 minutes before it was removed and secured properly. A short time later, life support was discontinued. The cause of death was acute myocarditis.[1] The expert affidavit submitted with the complaint alleged that the hospital and doctor failed to provide appropriate emergency treatment, including immediate intubation when the patient was critically ill and suffering from myocarditis; failed to properly secure the tube; and failed to realize that the tube had slid into the right mainstem bronchus until approximately 23 minutes after intubation.

Defendants filed a motion to dismiss, contending that Dr. Chou, the doctor who submitted the expert affidavit,[2] was not qualified to do so. "The standard for

---

[1] An inflammation of the heart muscle often caused by a viral infection.

[2] Under OCGA § 9-11-9.1 (a), "In any action for damages alleging professional malpractice against:
> (1) A professional licensed by the State of Georgia and listed in subsection (g) of this Code section, . . . the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim."

determining an expert's competence to testify is governed by OCGA § 24-9-67.1,[3] and the statute applies to affiants under OCGA § 9-11-9.1." *Vaughan v. WellStar Health System*, 304 Ga. App. 596, 598 (696 SE2d 506) (2010). OCGA § 24-9-67.1 (c) (2) (A) provides that in medical malpractice actions, the expert must have "actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given as the result of having been regularly engaged in . . . [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue." Id. "Whether a witness is qualified to render an opinion as an expert is a legal determination for the trial court and will not be disturbed absent a manifest abuse of discretion." *Mason v. Home Depot U.S.A.*, 283 Ga. 271, 279 (658 SE2d 603) (2008).

In this case, Dr. Chou's curriculum vitae attached to his affidavit shows that he has been a licensed physician since 2003. The negligent act complained of in this case occurred on November 25, 2008. For four of the five years that Dr. Chou had

---

[3] As of January 1, 2013, that Code section was changed to OCGA § 24-7-702.

3

practiced medicine, he was a resident in internal medicine and pediatrics. The trial court's order stated that because the residency was not in the subject specialty area of emergency pediatric medicine or emergency medicine, but instead consisted of a series of rotations in a variety of medical fields, Dr. Chou could not show that he was regularly engaged in the subject specialty for three of the five years prior to the alleged negligence. Specifically, the record shows that Dr. Chou spent only 30 days a year in a rotation through the department of emergency medicine. After his residency, Dr. Chou went to work in an urgent care clinic. Dr. Chou acknowledged that he has done no intubations at all since he started working at the urgent care clinic and that the clinic does not possess intubation equipment.

Aguilar argues that Dr. Chou does not have to practice in the same specialty area as Dr. Schultz in order to be qualified to submit an expert affidavit. That is true; however, as this Court stated in *Cotten v. Phillips*, 280 Ga. App. 280 (633 SE2d 655) (2006):

> It appears that the legislature has allowed for an overlap in specialties, whereby an otherwise qualified medical doctor belonging to "Specialty A" can render an opinion about the acts or omissions of another medical doctor belonging to "Specialty B" - so long as the opinion of the expert witness belonging to "Specialty A" pertains to Specialty A. . . . In the instant case, . . . "the area of practice in which the opinion is to be

4

given" is vascular surgery - Dr. Filtzer's specialty - *not* orthopedics - Dr. Cotten's specialty. Accordingly, because Dr. Filtzer is a licensed vascular surgeon who is qualified to give an opinion on the vascular issues in this case, he clearly has the requisite "knowledge and experience in the area in which his opinion is given" necessary to satisfy the statute."

Id at 283. Thus, in *Cotten*, this Court held that the trial court properly admitted testimony by a vascular surgeon concerning an orthopedist's failure to assess vascular issues incident to knee replacement surgery. Id. That is not the case here and does not alter the fact that Dr. Chou does not have the requisite experience in the area in which his opinion is given, either pediatric emergency medicine or the even broader area of emergency medicine.

*Emory-Adventist v. Hunter*, 301 Ga. App. 215 (687 SE2d 267) (2009), relied on by Aguilar, does not demand a different result. In that case, although the expert was a resident in training, the court found that the doctor had regularly engaged in the repeated performance of acts relevant to the acts or omissions alleged to constitute malpractice. Id. at 219.

Further, Aguilar's claims that Dr. Chou stated in his supplemental affidavit that he personally intubated numerous patients, including infants and that one third of his patients at the urgent care clinic are children are not persuasive.

> Only a doctor who has an appropriate level of knowledge, as determined by the judge, OCGA § 24-9-67.1 (c) (2) (A), and who has significant familiarity with the area of practice in which the expert opinion is to be given, is authorized to judge another doctor's performance in that area of practice. To permit even a veteran general practitioner to judge the performance of a specialist, including decisions concerning either procedures or referrals, would eviscerate the statute's purpose of assuring that a medical professional is not held negligent in the absence of evidence that he violated a standard of care established by his peers.

(Citation and punctuation omitted.) *Hope v. Kranc*, 304 Ga. App. 367, 370 (1) (b) (696 SE2d 128) (2010).

Further, "it is not sufficient that the expert have just a minimum level of knowledge in the area in which the opinion is to be given. Instead, the expert must have regularly engaged in the active practice of the area of specialty in which the opinion is to be given" and must have done so with sufficient frequency to establish an appropriate level of knowledge." (Punctuation omitted.) *Nathans v. Diamond*, 282 Ga. 804, 806 (1) (654 SE2d 121) (2007). See also *Dawson v. Leder*, 294 Ga. App.

6

717, 719-720 (669 SE2d 720) (2008) (doctor who taught medical students and residents in the areas of surgery and critical care asserted that she had "airway training" and that "managing airway compromise and looking at ways to prevent [it] fell within her area of expertise;" but, this did not establish "that she taught and/or practiced in the area of post-surgical airway management with sufficient frequency to establish an appropriate level of knowledge).

Accordingly, we conclude that the trial court did not abuse its discretion in determining that Dr. Chou was not actively engaged in the subject specialty for three of the five years prior to the alleged negligence. See *Nathans*, supra; *Hope*, supra.

*Judgment affirmed. Doyle, P. J., and Boggs, J., concur.*

7