**SECOND DIVISION**
**BARNES, P. J.,**
**MCFADDEN and MCMILLIAN, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 21, 2013**

# In the Court of Appeals of Georgia

A12A2256. ALLISON et al. v. WILSON.

A12A2257. ALLISON et al. v. WILSON.

McMILLIAN, Judge.

This appeal arises from a contempt order issued after appellant Sharon Allison and her attorneys failed to pay attorney fees awarded for alleged discovery violations. That discovery focused on locating and serving Allison's co-defendant Darnell A. Sandifer, Jr. Based on an exhaustive review of the record, including the transcripts from numerous hearings that spanned over the course of fifteen months, we find that the trial court erred in awarding fees under OCGA § 9-11-37 (a) (4) (A) because the trial court erroneously believed that it had issued a prior order compelling Allison and her counsel to provide that information. Because the contempt order striking Allison's

answer was based on the erroneous fee award, the contempt order must also be reversed and vacated.

On October 30, 2008, appellee Phillippa Wilson was allegedly injured when her vehicle was struck from behind by a vehicle Sandifer was driving. The car was owned by Allison, who is Sandifer's aunt, and Wilson filed a personal injury suit against both Sandifer and Allison[1] (collectively referred to as defendants) on February 8, 2010.[2] Allison ultimately acknowledged service of the complaint, but Sandifer refused to acknowledge service, and Wilson's attempts to serve him were unsuccessful. Consequently, on October 13, 2010, Wilson filed a motion for permission to serve Sandifer outside the statute of limitation and to compel Allison and her attorneys to appear before the court and disclose "all available information regarding" Sandifer's whereabouts." Wilson argued that Allison, who apparently had

---

[1] State Farm Mutual Insurance Company was also sued, but the parties agreed to dismiss State Farm without prejudice.

[2] Wilson's husband, appellee Hepburn George Wilson, filed a separate loss of consortium claim against both defendants, and the appeal in that case has been docketed in the Court as Case Number A12A2257. These appeals, however, present identical issues, and we will refer to both appellees as plaintiff or Wilson.

stated in her deposition[3] that she did not know where either Sandifer or his mother[4] lived, appeared to be "withholding basic information about her family that might assist [Wilson] in locating and serving Defendant Sandifer. . . ." Further, according to Wilson's motion, Wilson's counsel had requested that defendants' attorney, Allison M. McDonald,[5] either "turn over" Sandifer's location or acknowledge service on his behalf, but that she had refused to either acknowledge service or reveal his location, despite having met with Sandifer in her office "in recent weeks." The trial court ordered Allison and her counsel to appear at a hearing on Wilson's motion and "disclose all information they have or reasonably should have regarding [Sandifer's] present whereabouts and show cause why [Wilson's] Motion for Permission to Serve [Sandifer] Beyond Statute of Limitation should not be granted."

Although not transcribed, it appears that this hearing was held on October 21, 2010. On October 27, 2010, the trial court granted Wilson's request to serve Sandifer

---

[3] Although it appears undisputed that Allison's deposition was taken on August 2, 2010, it was never filed of record in the trial court, despite Wilson's counsel unsuccessful attempt to e-file it on April 22, 2011.

[4] Sandifer's mother is Allison's sister.

[5] On March 31, 2010, Allison M. McDonald, of the Law Offices of Tavis L. Knighten, P. C., filed an entry of appearance on behalf of both Sandifer and Allison.

outside the statute of limitation, finding that Wilson had exercised due diligence in attempting to locate and serve Sandifer. Further, the court held: "In the event that the location of Darnell Sandifer is not provided to Plaintiff through standard discovery measures, this Court will entertain a Motion to Compel on this issue and will consider awarding attorneys fees, expenses, and other sanctions as are appropriate."

On November 16, 2010, Allison filed responses to Wilson's first continuing interrogatories. Allison stated that to the best of her "recollection," Sandifer's last known address was on Washington Road in Atlanta, but that she did not know the specifics. Allison also stated that she believed Sandifer was attempting to gain employment through an Atlanta Job Corps program on West Lake Avenue in Atlanta, and specifically referenced her prior deposition testimony to that effect. Allison stated that she had last seen Sandifer at McDonald's office, but that the details of that conversation were protected by attorney-client privilege. Allison also provided her sister's cell phone number and said she believed her sister resided in Union City, Georgia. Allison said she did not have a phone number for Sandifer, and that she did not know any "social networking" or email addresses for either Sandifer or her sister.

On December 6, 2010, Wilson filed a motion to compel, enter judgment, and for sanctions based on her unsuccessful attempts to obtain an acknowledgment of

4

service from Allison, and her unsuccessful attempts to locate and serve Sandifer.[6] Wilson attached Allison's interrogatory responses and said that Allison had "amazingly" denied knowing where Sandifer could be located and served. Wilson argued that "every reasonable means to attempt to locate and serve [d]efendants," had been utilized, and characterized Allison's and McDonald's conduct as "extreme[,] outrageous, . . . [and] obstructive[.]" As relief, Wilson asked the court to strike any responsive pleadings that had been filed in the case, enter judgment against one or both defendants, impose sanctions and award attorney fees and expenses.

A few days later, Allison signed an acknowledgment of service and filed a response to Wilson's motion to compel, asserting, among other things, that she had answered all deposition and interrogatory questions truthfully.

The trial court held a hearing on Wilson's motion on February 1, 2011. On the question of service on Sandifer,[7] Wilson reminded the court that at the October 21

---

[6] Wilson attached various emails and letters to her motion, which she said demonstrated her attempts to perfect service or obtain acknowledgments from both defendants; one of these attachments was a reply email from McDonald in which she reiterated Sandifer's continued refusal to acknowledge service, but pointed out that Sandifer had been successfully served in other lawsuits arising out of this accident.

[7] During the hearing, Wilson's counsel referred extensively to Allison's deposition testimony, despite the fact that the deposition had never been filed of record in the trial court. Further, Wilson's attorneys outlined Allison's prolonged

5

hearing McDonald revealed that Sandifer had been in her office, and the trial court indicated the importance of that revelation to her decision, stating "I think that's what turned me around on this thing." Defendants' counsel[8] did not appear to oppose Wilson's request to serve Sandifer by publication, but pointed out to the court that Sandifer could not be forced to acknowledge service. The trial judge expressed her understanding, but deemed it a "little suspicious" that McDonald would represent to the court that she did not know where to locate Sandifer, despite the fact that he had been in her office and that he was related to her other client. The court granted Wilson's request to serve Sandifer by publication finding "that the plaintiff has exercised extraordinary diligence, as the Court has found in its prior order, and that Mr. Sandifer is evading service . . . ."

The court then turned to the issue of sanctions. Defendants' counsel informed the court that Sandifer had been served in two other cases that were pending as a

failure to acknowledge service after she agreed to do so, but ultimately the parties resolved that issue by agreeing that Allison's answer would not be stricken if she agreed to drop her service defenses.

[8] In addition to McDonald, defendants were also represented at the hearings by McDonald's co-counsel, Tavis Knighten, and "defendants' counsel" will be used to refer to either McDonald or Knighten. However, although it is somewhat cumbersome and confusing, at times it is necessary for us to refer to McDonald individually.

result of the accident, but that Wilson's counsel had not attempted to "simply look to see where he was served in those cases." Defendants' counsel pointed out that it was Wilson's burden to serve Sandifer and that Sandifer had not authorized his counsel to disclose his address. The trial judge again expressed her understanding, but did not reconsider her finding, and announced that Wilson was entitled to attorney fees for bringing the motion. In response to defense counsel's inquiries concerning the statutory basis for an attorney fee award, the court stated that the award was based on contempt for a willful violation of her prior order.[9] However, recognizing it did not have jurisdiction over Sandifer because he had not yet been served, the court decided to hold another hearing at a later date to determine the amount of attorney fees and whether the sanction would be imposed against the defendants individually, collectively, along with their counsel, or some combination thereof.

The court entered a written order on February 8, 2011 in which it found that 1) Allison had been properly served and that all service defenses asserted by Allison were stricken; 2) Sandifer had been evading service despite Wilson's due diligence in attempting to serve him and that, therefore, he could be served by publication; 3)

---

[9] In it not clear from either the February 1 hearing transcript or the written order entered on February 8 what directive from the October 27, 2010 order the court believed to have been violated.

defendants and/or their counsel had willfully violated the October 27, 2010, order and were in contempt of court, entitling Wilson to an award of attorney fees and expenses to be determined at a later hearing.

Another hearing was held on March 22, 2011. The court opened the hearing by referencing the February 8 order, reiterating that either Allison or her counsel had willfully violated the October 27 order, which required them to respond in good faith to discovery requests designed to ascertain Sandifer's whereabouts so he could be served.[10] Defendants' counsel objected to the hearing on the basis that they had not been informed of the statutory basis for the award, and the court responded that it was based on *either* contempt for willfully violating the October 27 order or a violation of discovery rules.

Defendants' counsel argued that Allison had cooperated fully by responding to interrogatories and having her deposition taken and thus fees were not authorized under OCGA § 9-11-37 (a) for a discovery violation. The court then questioned whether Allison had responded honestly and fully in her interrogatories, and a lengthy exchange between the parties' attorneys and the court ensued, with both sides making

---

[10] The court deferred ruling on a pending motion to transfer venue to Clayton County.

8

numerous references to Allison's interrogatory responses and deposition testimony in their attempts to establish her credibility or lack thereof. In particular, defendants' counsel pointed out that since the last hearing Sandifer had in fact been served at Atlanta Job Corps on West Lake Avenue, and that Allison had provided a partial address for that location in her deposition and interrogatory responses. The trial court, however, was not persuaded that this information demonstrated Allison had been forthcoming in her responses, noting that Allison had not provided an exact street address.

After more back and forth about Allison's deposition and interrogatory responses and Wilson's attempts to serve Sandifer, the court finally opined that "the credibility is raised for the reason that I stated: The responses to the two sets of interrogatories and the deposition testimony coupled with the representation. That's where I found that it wasn't credible. . . . So I said there's been a willful violation of my order that says that they are to respond to discovery measures, . . ." The court continued that "[w]hen we came the last time and I heard all this about these evasive noncommittal discovery answers, discovery answers that clearly would not allow him service, . . . I said I believe that the motion to compel should be granted and I granted it. . . . That's . . . where we are." The court also indicated that since the motion had

9

been granted, Wilson was entitled to attorney fees incurred in bringing the motion under OCGA § 9-11-37.

On April 1, 2011, the trial court entered an order granting attorney fees and expenses pursuant to OCGA § 9-11-37 (a) (4) (A) (rather than for contempt as stated at the February 1, 2011 hearing and February 8, 2011 order) based on the following findings: (1) Allison was not forthcoming and truthful in her deposition regarding Sandifer's whereabouts; (2) Allison was not truthful and forthcoming in her interrogatory responses regarding her knowledge of Sandifer's address, location and whereabouts, despite being ordered by the court to cooperate with Wilson in good faith; and (3) Allison's interrogatory responses were not properly verified, amounting to a complete failure to respond.[11] Further, the court found that "[d]efendants' counsel permitted and condoned discovery abuses and violated this Court's rulings by not disclosing . . . information known to . . . Allison and defense counsel regarding . . . Sandifer's whereabouts despite . . . Sandifer physically meeting with defense counsel and . . . Allison in defense counsel's office prior to the hearing on Plaintiff's Motion to Compel and yet, Defendant Allison continued to refuse to identify Defendant

[11] Plaintiff's counsel raised the verification issue for the first time during the March 22 hearing, but not until both sides had made extensive reference to the interrogatory responses.

Sandifer's whereabouts in response to Plaintiff's discovery." The court noted in a footnote that Allison's "counsel unnecessarily expanded the proceedings by failing to acknowledge service . . . despite agreeing to do so in open court," and that while she was not awarding attorney fees on this basis, she had taken those actions into consideration in determining whether they acted willfully and in bad faith with respect to the service issue. The Court then ordered Allison and her counsel (hereinafter referred to collectively as appellants) to pay attorney fees and expenses of approximately $15,000 to plaintiffs' lawyers.

Appellants requested a certificate of immediate review, which the trial court denied. Appellants then filed a motion for reconsideration of the orders entered on October 27, 2010, February 8, 2011 and April 1, 2011. The trial court did not rule on this motion, and on July 8, 2011, Wilson filed a motion for contempt, to strike Allison's answer, enter default judgment and award attorney fees based on appellants' failure to pay the fees and expenses awarded by the court in the April 1 order.

On January 5, 2012, the court held a hearing on Wilson's motion for contempt and defendants' motion to transfer. The court denied the motion to transfer and found appellants in contempt for having failed to pay the attorney fees awarded in the April 1, 2011 order. Further, the court found there was no justification for the failure to

comply with the order and struck Allison's answer as a sanction for the contempt. The court did provide, however, that appellants could purge the order of contempt if the attorney fees were paid by 5:00 pm on January 6, 2012.

Appellants filed their notice of appeal to this Court the next day, specifically seeking appellate review of the contempt order and denial of the motion to transfer, which were entered on January 5, 2012, as well as the October 27, 2010 order granting Wilson's motion to serve Sandifer beyond the statute of limitation, the February 8, 2011 order granting Wilson's motion for sanctions, and the April 1, 2011 order granting Wilson's request for attorney fees and expenses.

1. As an initial matter, Wilson contends that we do not have jurisdiction to consider the orders that were entered prior to January 5, 2012, because those orders were not appealed within 30 days of entry as required by OCGA § 5-6-38 (a). But

> [w]here an appeal is taken under any provision of subsection (a), (b), or (c) of this Code section, all judgments, rulings, or orders rendered in the case which are raised on appeal and which may affect the proceedings below shall be reviewed and determined by the appellate court, without regard to the appealability of the judgment, ruling, or order standing alone and without regard to whether the judgment, ruling, or order appealed from was final or was appealable by some other express provision of law contained in this Code section, or elsewhere. . . .

12

OCGA § 5-6-34 (d).

OCGA § 5-6-34 (a) (2) expressly authorizes a direct appeal from an order of contempt, and thus, pursuant to OCGA § 5-6-34 (d), we have jurisdiction to consider the prior orders specified in the notice of appeal.

2. We now turn to appellants' arguments. In their first two enumerations of error, appellants challenge the trial court's finding that Sandifer was evading service and that, therefore, Wilson could serve him by publication (February 8, 2011, order). But Sandifer was in fact personally served; thus, the trial court's decision to allow him to be served by publication has been rendered moot. Further, Sandifer is not a party to this appeal and the trial court's determination that he was evading service does not appear to be properly before us.

3. Appellants next contend that the trial court abused its discretion by finding that Wilson exercised due diligence in attempting to locate and serve Sandifer (October 27, 2010 order). As stated above, the court held a hearing before issuing this order, but those proceedings were not transcribed. Thus, without knowing what transpired at that hearing, we have no basis to second guess the trial court's

13

decision.[12] "[W]here the transcript is necessary, as in the case sub judice, and the appellant omits it from the record on appeal or fails to submit a statutorily authorized substitute, the appellate court must assume the judgment below was correct and affirm." (Punctuation and citations omitted.) *Atwood v. Southeast Bedding Co.*, 236 Ga. App. 116 (1) (511 SE2d 232) (1999). *Blue v. Blue*, 279 Ga. 550 (615 SE2d 540) (2005); *Amaechi v. Somsino*, 259 Ga. App. 346, 347 (577 SE2d 48) (2003).

4. Appellants next contend that the trial court's failure to recite a statutory basis for an award of attorney fees and sanctions in the October 27 order violated their procedural due process rights. However, that order merely stated that the court would *entertain* a motion to compel and *consider* awarding fees and expenses in the event Sandifer's location was not disclosed through standard discovery procedures. We fail to see how the failure to recite a specific statutory basis for this contingent award of attorney fees violated appellants' procedural due process rights.

5. We now turn to appellants' fifth, sixth and seventh enumerations of error in which they contend, for various reasons, that the trial court erred by awarding

---

[12] For instance, at the February 1, 2011 hearing, the trial court stated that McDonald's statement at the October 21, 2010 hearing that Sandifer had been in her office was "what turned [her] around on this thing." Thus, it is clear that what was presented at that hearing was pivotal to the trial court's decision.

attorney fees under OCGA § 9-11-37 (a) (4) (A) as a sanction for discovery violations. "A trial court has broad discretion to control discovery, including the imposition of sanctions, and this Court will not reverse the trial court's ruling on such matters absent the showing of a clear abuse of discretion." (Punctuation and citation omitted.) *Alexander v. Atlanta Autosave, Inc.*, 272 Ga. App. 73, 78 (5) (611 SE2d 754) (2005). *Amaechi*, 259 Ga. App. at 347.

Appellants argue that because there was no prior order compelling discovery, attorney fees were not authorized by OCGA § 9-11-37 (a) (4) (A). We agree.

"As a general rule, Georgia law does not provide for the award of attorney fees even to a prevailing party unless authorized by statute or by contract." (Citation omitted.) *Suarez v. Halbert*, 246 Ga. App. 822, 824 (1) (543 SE2d 733) (2000). A motion to compel pursuant to OCGA § 9-11-37 (a) is appropriate when a party seeks more complete answers to allegedly incomplete or evasive discovery responses. See *Mayer v. Interstate Fire Ins. Co.*, 243 Ga. 436, 437 (1) (2) (254 SE2d 825) (1979). And, without question, OCGA § 9-11-37 (a) (4) (A) allows the successful proponent of a motion to compel to recover fees and expenses incurred in bringing the motion, and this award may be made against the party whose conduct necessitated bringing the motion, the party's attorney or both.

15

Although Allison submitted to a deposition and timely responded to Wilson's interrogatories that were hand delivered at the October 21 hearing, Wilson obviously was not satisfied with Allison's discovery responses, and therefore she was entitled to seek an order from the court compelling more adequate responses. *Mayer*, 243 Ga. at 438 (2).[13] And, if the court granted her motion, Wilson would have then been entitled to recover the attorney fees and expenses she incurred in bringing the motion pursuant to OCGA § 9-11-37 (a) (4) (A).

Clearly, that is what the trial court thought had occurred here when it entered the April 1 order directing appellants to pay fees under OCGA § 9-11-37 (a) (4) (A). But we are constrained to agree with appellants that the record shows otherwise. First, the trial court's order of October 27 cannot be treated as a motion to compel since it clearly stated that the court would "entertain" a motion to compel and "consider" awarding attorney fees if Sandifer's location was not provided through standard discovery measures. Thereafter, Allison filed her interrogatory responses, in which she disclosed partial addresses where Sandifer might be served, as well as her sister's

---

[13] A party may seek immediate sanctions without the necessity of a motion to compel when there has been a total failure to respond to discovery. *Rivers v. Goodson*, 184 Ga. App. 70, 72 (2) (360 SE2d 740) (1987); *Kemp v. Rouse-Atlanta, Inc.*, 207 Ga. App. 876 (429 SE2d 264) (1993) (on motion for reconsideration).

16

cell phone number. A few weeks later, Wilson filed what she denominated a motion to compel but, as appellants assert, that motion did not seek to have the court compel Allison to do anything and barely mentioned Allison's interrogatory responses; rather that motion sought to have Allison's answer stricken and the entry of a default judgment.

The court then held a hearing on the motion. As appellants further note, the order entered following that hearing did not compel Allison to do anything; rather, that order found Allison in contempt of the October 27 order and stated that Wilson would be entitled to fees on that basis. However, at the March 22, 2011 hearing, the court stated it had granted the motion to compel at the February hearing, and, as stated above, ultimately awarded fees to Wilson on the basis that she was entitled to recover the fees she incurred in seeking and obtaining an order compelling discovery, not because she was in contempt.

Further, because the trial court stated in its February 8 order that it was awarding fees based on a violation of its October 27 order and made no mention of an attorney fee award under OCGA § 9-11-37 (a) (4) (A), we are hard pressed to say that appellants were provided with an opportunity to be heard on whether fees should

be awarded under that section.[14] The transcript from the February 1 hearing clearly indicates that the trial court irrevocably decided to award fees at that time, leaving for resolution at a subsequent hearing only the amount of fees and who would have to pay them. Appellants were not informed that fees were being awarded under OCGA § 9-11-37 (a) (4) (A), despite defendants' counsel's repeated entreaties to the court to disclose the statutory basis for the award so they could prepare for a hearing; rather, the court informed them that the award was being made for contempt of the October 27 order.

Based on the foregoing, we conclude that Wilson was not entitled to an award of attorney fees under OCGA § 9-11-37 (a) (4) (A). Accordingly, we reverse the trial court's April 1, 2011 order.[15]

---

[14] OCGA § 9-11-37 (a) (4) (A) clearly contemplates a hearing prior to an award of fees incurred in bringing a successful motion to compel: "If the motion is granted, the court shall, *after opportunity for hearing*, require the party or deponent whose conduct necessitated the motion or the party or attorney advising such conduct or both of them to pay to the moving party the reasonable expenses incurred in obtaining the order, including attorneys fees, unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust."

[15] We thus find it unnecessary to consider appellants' other challenges to the attorney fee award.

6. In light of our holding in Division 5, it is unnecessary for us to consider appellants' contention that the award was excessive.

7. Because we conclude that the trial court erred by assessing attorney fees and expenses against appellants, as stated in Division 5, it follows that the order of January 5, 2012, holding appellants in contempt and striking Allison's answer based on her failure to comply with that order must likewise be reversed. Thus, we need not consider appellants' enumerations of error challenging the contempt order.

8. Lastly, we consider whether the trial court erred by denying defendants' motion to transfer venue from Fulton County to Clayton County. "The denial of a motion to transfer is reviewed for an abuse of discretion, . . . and we will affirm the trial court's findings on disputed factual questions relating to venue if there is any evidence to support them. But we review de novo the trial court's application of the law to the undisputed facts." (Punctuation and citation omitted.) *Killearn, Inc. v. Southern Structural, Inc.*, 308 Ga. App. 494, 495 (1) (707 SE2d 882) (2011). *Mariner Healthcare, Inc. v. Foster*, 280 Ga. App. 406, 411 (4) (634 SE2d 162) (2006). In support of this motion, defendants submitted their affidavits averring that they were

19

residing in Clayton County on February 8, 2010, the date the complaint was filed.[16] However, in his deposition, Sandifer provided conflicting and contradictory testimony about where he was living at that time, although he explained the contradictions by saying it was difficult for him to remember specific dates and specific addresses because he had moved numerous times since he moved to Georgia as a child, and had moved several times between the date of the accident and the date the complaint was filed. Further, Sandifer's driver's license had a Fulton County address, and he had never registered to vote in any county but Fulton County. Although the trial court's order denying the motion to transfer did not contain any specific factual findings, Sandifer's deposition was before the court at the venue hearing, and the court clearly considered his testimony demonstrating his uncertainty concerning when he lived where, and in particular his testimony that he was unsure whether his averment in his affidavit that he was residing in Clayton County at the time that suit was filed was true. The trial court resolved these discrepancies against the motion to transfer, and determined that venue was proper in Fulton County, the county where Sandifer had lived for much, if not all, of the relevant time. Based on

---

[16] There does not appear to be any question that Allison was, in fact, residing in Clayton County at that time.

20

the record before us, we cannot say that the trial court abused its discretion by denying the motion to transfer.

*Judgment affirmed in part and reversed in part. Barnes, P. J., and McFadden, J., concur.*