**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 23, 2017**

# In the Court of Appeals of Georgia

A17A0709. GRAHAM v. REYNOLDS et al.

McFADDEN, Presiding Judge.

This medical malpractice action arose from the death of Lakeither Marie Thomas. Her husband, Curtis Thomas, and the representative of her estate, Anthony Reynolds (collectively "the plaintiffs"), sued Dr. James A. Graham, an emergency room physician, alleging that Graham had negligently misdiagnosed Thomas's cardiac condition, causing her death. Graham moved to dismiss the complaint for failure to state a claim on the ground that the expert affidavit attached to the plaintiffs' complaint pursuant to OCGA § 9-11-9.1 was insufficient. See OCGA § 9-11-9.1 (e) (if expert affidavit accompanying professional malpractice claim is defective, complaint is subject to dismissal for failure to state a claim); *Hewett v.*

*Kalish*, 264 Ga. 183, 184-185 (1) (442 SE2d 233) (1994) (same). Graham challenged the competency of the affiant and the adequacy of the affidavit's contents.

The trial court denied the motion to dismiss and we granted interlocutory appellate review. There is no merit to either of Graham's challenges to the affidavit. So we affirm.

1. *Facts and procedural history.*

At this stage in the case the evidence has not been developed, and the following factual recitation is taken from the plaintiffs' complaint. The plaintiffs alleged that Thomas went to the hospital emergency room on May 22, 2011, complaining of chest pains and nausea. She had significant cardiac risk factors, including obesity, tobacco use, and uncontrolled diabetes. On Graham's orders, Thomas underwent an electrocardiogram, among other procedures. Graham ultimately diagnosed Thomas as having anxiety or panic attacks and discharged her from the hospital. At that time, Thomas was still experiencing dry heaves and chest pains. Her symptoms worsened at home and within a few hours she returned to the hospital in an ambulance. She underwent another electrocardiogram. At that point, Graham recognized that Thomas was in cardiac distress. She was placed in an ambulance to travel to another hospital

90 miles away for more comprehensive care. En route, Thomas suffered a massive heart attack and died.

The plaintiffs alleged in their complaint that Graham had deviated from the standard of care applicable to "physicians generally under similar conditions and like surrounding circumstances," that this deviation from the standard of care was both negligent and grossly negligent, and that as a direct and proximate result Thomas was misdiagnosed and died of a heart attack. The plaintiffs attached to their complaint the affidavit of Dr. Frank A. Cuoco, a licensed medical doctor specializing in cardiology, including cardiac electrophysiology. Cuoco opined that Graham's care and treatment of Thomas at the hospital "did not satisfy the standard of care exercised by the medical profession generally under similar conditions and like surrounding circumstances." Specifically, he opined that Graham had misdiagnosed Thomas with a panic attack and discharged her inappropriately "during an episode of Acute Coronary Syndrome"; that, based on Thomas's electrocardiogram and other symptoms, Graham "should have, but failed to, diagnose [her] with an acute inferior wall myocardial infarction and/or an acute ST-segment mycardial infarction"; that upon such diagnosis, "appropriate intervention to restore coronary flow should have been undertaken immediately"; that appropriate intervention would have included

3

specific actions and procedures described by Cuoco in the affidavit; that Graham's deviations from the standard of care proximately caused Thomas's death; and that, had Graham properly diagnosed Thomas, she "would have survived the episode of Acute Coronary Syndrome she suffered on May 22, 2011."

Graham moved to dismiss the action on the ground that Cuoco's affidavit did not meet the requirements of OCGA § 9-11-9.1 and OCGA § 24-7-702. OCGA § 9-11-9.1 (a) provides that "[i]n any action for damages alleging professional malpractice against [specified licensed professionals] the plaintiff shall be required to file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." And OCGA § 24-7-702 (c) sets forth specific competency requirements for experts in professional malpractice actions. "An affiant shall meet the requirements of [OCGA § 24-7-702] in order to be deemed qualified to testify as an expert by means of the affidavit required under [OCGA §] 9-11-9.1." OCGA § 24-7-702 (e).

Graham challenged the plaintiffs' expert affidavit in two respects. He argued that Cuoco was not competent to testify and he argued that the affidavit did not address gross negligence. At Graham's request, the trial court held a hearing on

Graham's motion, at which both sides gave argument but neither side presented evidence. See generally OCGA § 24-7-702 (d) (trial court may hold hearing on expert witness's qualifications). Subsequently, the trial court entered an order rejecting both of Graham's challenges to the affidavit and denying his motion to dismiss. We granted interlocutory review.

2. *Competency of affiant.*

Graham argues that the trial court should have dismissed the action because the plaintiffs' expert affiant, Cuoco, did not meet the competency requirements set out at OCGA § 24-7-702 (c). "An affiant shall meet the requirements of [OCGA § 24-7-702] in order to be deemed qualified to testify as an expert by means of the affidavit required under Code Section 9-11-9.1." OCGA § 24-7-702 (e).

"[T]he qualification of an expert witness under Rule 702 is generally a matter committed to the sound discretion of the trial court." *Dubois v. Brantley*, 297 Ga. 575, 578-579 (1) (775 SE2d 512) (2015) (citation omitted). See also *Zarate-Martinez v. Echemendia*, 299 Ga. 301, 311 (3) (788 SE2d 405) (2016); *Aguilar v. Children's Healthcare of Atlanta*, 320 Ga. App. 663, 664 (739 SE2d 392) (2013). Although an appellate court usually reviews a trial court's order on a motion to dismiss de novo, when the trial court has held a hearing on the competency of a witness to give

5

affidavit testimony in compliance with OCGA § 9-11-9.1, "our review determines only whether the trial court has abused [his] discretion." *Bacon County Hosp. & Health System v. Whitley*, 319 Ga. App. 545, 546 (737 SE2d 328) (2013) (citations and punctuation omitted). Contrary to Graham's argument on appeal, "[i]t is irrelevant whether or not evidence was offered at the hearing." *Craigo v. Azizi*, 301 Ga. App. 181, 183 (1) (687 SE2d 198) (2009). As detailed below, the trial court did not abuse his discretion in finding Cuoco competent to testify.

In a medical malpractice action, OCGA § 24-7-702 (c) requires, among other things, that at the time the act or omission is alleged to have occurred, the expert "had actual professional knowledge and experience in the area of practice or speciality in which the opinion is to be given. . . ." OCGA § 24-7-702 (c) (2). Such knowledge and experience must result from the expert having been regularly engaged in either

> [t]he active practice of such area of specialty of his or her profession for at least three of the last five years, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in performing the procedure, diagnosing the condition, or rendering the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue;

OCGA § 24-7-702 (c) (2) (A), or

6

[t]he teaching of his or her profession for at least three of the last five years as an employed member of the faculty of an educational institution accredited in the teaching of such profession, with sufficient frequency to establish an appropriate level of knowledge, as determined by the judge, in teaching others how to perform the procedure, diagnose the condition, or render the treatment which is alleged to have been performed or rendered negligently by the defendant whose conduct is at issue[.]

OCGA § 24-7-702 (c) (2) (B).

The statute also requires, with certain exceptions not applicable here, that the expert be a "member of the same profession" as the defendant. OCGA § 24-7-702 (c) (2) (C) (i).

And it contains a provision specifying the preconditions for a physician's testimony about the negligence of other, non-physician medical professionals. OCGA § 24-7-702 (c) (2) (D). That provision is not applicable here.

In his appellate briefs, Graham argues that Cuoco did not satisfy these requirements because he "is not a member of the same profession as [Graham]" and he "does not meet the knowledge and experience requirement by virtue of having recently practiced the profession . . . or recently taught it". Neither of those arguments provide grounds for reversal.

7

(a) *Same profession.*

We find no merit in Graham's argument that he and Cuoco are not members of the same profession. Both are licensed medical doctors. See OCGA § 9-11-9.1 (g) (11) (listing "medical doctor" as a "profession" to which the affidavit requirement applied). Graham and Cuoco have different specialities. But Graham offers no authority whatsoever for the proposition that licensed medical doctors must have the same specialty to be considered members of the same profession. To the contrary, we have held that a medical doctor in one specialty may have the requisite knowledge and experience under OCGA § 24-7-702 (c) (2) to give expert opinion testimony regarding the acts or omissions of a medical doctor in another specialty. See *MCG Health v. Barton*, 285 Ga. App. 577, 581-582 (1) (647 SE2d 81) (2007) (construing predecessor to OCGA § 24-7-702); *Cotten v. Phillips*, 280 Ga. App. 280, 283-285 (633 SE2d 655) (2006) (same); see also *Aguilar*, supra, 320 Ga. App. at 665 (although ultimately finding proffered expert was not qualified, acknowledging that medical doctor does not have to practice in same specialty as defendant medical doctor to be qualified to submit expert affidavit).

(b) *Recent practice or teaching.*

8

Graham argues that Cuoco was not competent to give his opinion because he did not have the requisite recent practice, OCGA § 24-7-702 (c) (2) (A), or teaching, OCGA § 24-7-702 (c) (2) (B), in the area of emergency medicine. But the purpose of this statutory requirement is to ensure that experts "have recent experience in the areas about which they are opining. . . ." *Zarate-Martinez*, supra, 299 Ga. at 308 (2) (a). As indicated above, the requirement

> does not mean that the plaintiff's expert must have knowledge in the same area of practice/specialty as the defendant doctor, but instead means that the expert must have knowledge and experience in the practice or speciality that is relevant to the acts or omissions that the plaintiff alleges constitute malpractice and caused the plaintiff's injuries.

*Bonds v. Nesbitt*, 322 Ga. App. 852, 857 (3) (747 SE2d 40) (2013) (citation and punctuation omitted). Pertinent to this case, the requisite recent practice or teaching must "establish an appropriate level of knowledge . . . in . . . diagnos[ing] the condition. . . ." OCGA § 24-7-702 (c) (2) (A) & (B). An expert has the appropriate level of knowledge

> to the extent the expert has sufficient knowledge about [diagnosing the condition]—however generally or specifically it is categorized, so long as it is the [condition] that the defendant is alleged to have [diagnosed]

9

negligently — to reliably give the opinions about the [diagnosis of the condition] that the expert proposes to give.

*Dubois*, supra, 297 Ga. at 587 (2).

The plaintiffs allege that Graham negligently diagnosed Thomas's urgent cardiac condition, resulting in his failure to provide appropriate treatment to her. In his affidavit, Cuoco opined that Graham should have diagnosed the cardiac condition from Thomas's electrocardiogram report and other symptoms, and that his failure to do so deviated from the applicable standard of care. Cuoco also indicated in his 2013 affidavit that since 2009 he had taught in the area of cardiac electrophysiology as a faculty member at a state medical university. The allegations in the complaint and the contents of Cuoco's affidavit authorized the trial court to determine that Cuoco had knowledge and experience in a practice or specialty relevant to Graham's alleged negligence. See *Cotten*, supra, 280 Ga. App. at 282-283 (trial court did not abuse discretion in holding that vascular surgeon was qualified to testify as to orthopedic surgeon's failure to properly assess, monitor, and respond to patient's vascular condition during orthopedic treatment and surgery).

Graham argues that our decisions in *Bonds v. Nesbitt*, supra, 322 Ga. App. 852, and *Aguilar v. Children's Healthcare of Atlanta*, supra, 320 Ga. App. 633, compel a

different result. They do not. In both cases, the trial courts found that the proffered experts were *not* qualified to testify and we affirmed on the ground that the trial courts did not abuse their discretion in so ruling. *Bonds*, supra at 858-859 (3); *Aguilar*, supra at 666. So those cases were in a very different procedural posture from this case. Here, the trial court determined that Cuoco *was* competent to testify. We find no abuse of discretion in that ruling.

3. *Adequacy of contents of affidavit.*

Graham argues that the trial court should have dismissed the action because the plaintiffs' expert affidavit was inadequate for not asserting that Graham was grossly negligent. But such assertion was not required for the affidavit to meet the requirements of OCGA § 9-11-9.1.

OCGA § 9-11-9.1 imposes a pleading requirement, not an evidentiary requirement. *Thompson v. Ezor*, 272 Ga. 849, 852 (2) (536 SE2d 749) (2000); *Sawyer v. DeKalb Medical Center,* 234 Ga. App. 54, 57 (2) (506 SE2d 197) (1998). Its purpose is to "reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling him to recover. . . ." *Sawyer*, supra at 56 (2); see also *Oller v. Rockdale Hosp.*, __ Ga. App. __, __ (1) (b) (__ SE2d __) (Case No. A17A1208, decided Aug. 14, 2017). "Accordingly, an expert affidavit

11

which would be insufficient to satisfy the evidentiary standards of OCGA § 9-11-56 [regarding summary judgment] may nevertheless be sufficient to satisfy the pleading standards of OCGA § 9-11-9.1." *Sawyer*, supra at 57 (2) (citations and punctuation omitted); see also *Thompson*, supra at 852 (2); *Williams v. Hajosy*, 210 Ga. App. 637, 638 (1) (436 SE2d 716) (1993). Plaintiffs are given a wide berth to conform to the statutory requirements, *Phoebe Putney Mem. Hosp. v. Skipper*, 235 Ga. App. 534, 535 (510 SE2d 101) (1998), and in ruling on a motion to dismiss based on an allegedly defective affidavit, a court should construe the affidavit "most favorably to the plaintiff and all doubts should be resolved in [the] plaintiff's favor, even if an unfavorable construction of the affidavit may be possible[,] so long as such construction does not detract from [the statutory] purpose. . . ." *Hewett*, supra, 264 Ga. at 184 (1) (citation omitted). "[F]or a complaint to be subject to dismissal for failure to state a claim, the affidavit must disclose with certainty that the plaintiff would not be entitled to relief under any state of provable facts." *Sawyer*, supra at 56 (2) (emphasis omitted). We review de novo the trial court's ruling on whether the affidavit met the pleading requirements of OCGA § 9-11-9.1. See *Washington v. Ga. Baptist Medical Center*, 223 Ga. App. 762, 765 (2) (478 SE2d 892) (1996), reversed

in part on other grounds by *Porquez v. Washington*, 268 Ga. 649 (492 SE2d 665) (1997).

To satisfy OCGA § 9-11-9.1, an expert affidavit must set forth "at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1 (a) (3). Applying the standard set forth above, Cuoco's affidavit met this requirement — it set forth acts and omissions by Graham that, in Cuoco's opinion, breached the applicable standard of care. But citing Georgia's emergency medical care statute, OCGA § 51-1-29.5 (c), Graham argues that in this case it was not enough for the affidavit to set forth a negligent act or omission. That Code section provides that

> [i]n any action involving a health care liability claim arising out of the provision of emergency medical care in a hospital emergency department . . . , no physician or health care provider shall be held liable unless it is proven by clear and convincing evidence that the physician or health care provider's actions showed gross negligence.

OCGA § 51-1-29.5 (c). In *Ndlovu v. Pham*, 314 Ga. App. 337 (723 SE2d 729) (2012), we referred to but did not decide the issue of the interplay between the pleading requirement of OCGA § 9-11-9.1 and the evidentiary requirement of OCGA § 51-1-29.5. That issue is now squarely before us.

13

We are not persuaded by Graham's argument that, under OCGA § 51-1-29.5, the plaintiffs were required to submit an affidavit asserting that Graham's acts and omissions constituted gross negligence. First, such a ruling would conflict with the plain language of OCGA § 9-11-9.1, which merely requires an affidavit setting forth an act of negligence, OCGA § 9-11-9.1 (a) (3), and "does not require that specific language be employed." *Minster v. Pohl*, 206 Ga. App. 617, 621 (4) (a) (426 SE2d 204) (1992). Moreover, we have held that OCGA § 9-11-9.1 does not require an affiant to specifically opine that the act constituted negligence. *Bowen v. Adams*, 203 Ga. App. 123, 124 (416 SE2d 102) (1992). Per force OCGA § 9-11-9.1 does not require an affiant to specifically opine that the act constituted gross negligence, even if the plaintiff will have to prove gross negligence to prevail on summary judgment or at trial. This comports with the § 9-11-9.1 affidavit's function as a pleading requirement, not an evidentiary requirement. Nothing in OCGA § 51-1-29.5 purports to modify the usual standard for dismissal for failure to state a claim based on a defective OCGA § 9-11-9.1 affidavit. Cf. *Nguyen v. Southwestern Emergency Physicians*, 298 Ga. 75, 84 (3) (779 SE2d 334) (2015) (noting that OCGA § 51-1-29.5, which requires plaintiffs who bring malpractice claims based on emergency

medical care in a hospital emergency department to meet a higher standard and burden of proof to prevail, did not purport to modify summary judgment standard).

Moreover, gross negligence is a degree of negligence, and

[a]s a general rule, when facts alleged as constituting gross negligence are such that there is room for difference of opinion between reasonable people as to whether or not negligence can be inferred, and if so whether in degree the negligence amounts to gross negligence, the right to draw the inference is within the exclusive province of the jury.

*Abdel-Samed v. Dailey*, 294 Ga. 758, 765 (3) (755 SE2d 805) (2014) (citations and punctuation omitted). "'Gross negligence' is defined as the absence of even slight diligence, and slight diligence is defined in OCGA § 51-1-4 as 'that degree of care which every man of common sense, however inattentive he may be, exercises under the same or similar circumstances.'" Id. (citations and punctuation omitted).

Construing the affidavit most favorably to the plaintiffs and resolving all doubts in their favor, as we must do on a motion to dismiss, see *Hewett*, supra, 264 Ga. at 184 (1), we cannot say that Cuoco's affidavit discloses with certainty that the plaintiffs would not be entitled to relief under any state of provable facts. See *Sawyer*, supra, 234 Ga. App. at 56 (2). To the contrary, the affidavit discloses that although Thomas's electrocardiogram revealed that she was experiencing a serious cardiac

15

condition requiring immediate intervention, Graham told her that she was having an anxiety attack and sent her home. Even under the heightened burden imposed by OCGA § 51-1-29.5 (c), these facts (if proved) could authorize a jury to find gross negligence. See *Abdel-Samed*, supra, 294 Ga. at 765-766 (3) (evidence that emergency room physician diagnosed patient as requiring emergency hand surgery but then either made no effort to transfer patient to hand surgeon or waited more than five hours to contact hand surgeon could support jury finding of gross negligence). Consequently, the trial court did not err in denying Graham's motion to dismiss the case for failure to state a claim.

*Judgment affirmed. Branch and Bethel, JJ., concur*.