**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.gov/rules**

**May 22, 2026**

# In the Court of Appeals of Georgia

A26A0830. COLL v. KELLY.

MARKLE, Judge.

Christy Coll appeals from the dismissal of her medical malpractice suit against Dr. John Kelly for the failure to attach an expert affidavit as required under OCGA § 9-11-9.1. Because we conclude that the affidavit was sufficient to meet the statutory requirements, we reverse.

We review the grant of a motion to dismiss de novo, construing the pleadings "in the light most favorable to the plaintiff" and treating "all well-pled allegations in the complaint as true." *Blau v. Ga. Dep't of Corr.*, 364 Ga. App. 1, 2 (873 SE2d 464) (2022) (quotation marks omitted). "[A]ny doubts regarding the complaint must be construed in favor of the plaintiff." *McLeod v. Costco Wholesale Corp.*, 369 Ga. App.

717, 718 (894 SE2d 442) (2023) (quotation marks omitted)).[1] Importantly, when the dismissal is based on the sufficiency of an expert's affidavit under OCGA § 9-11-9.1, this Court has cautioned that

> OCGA § 9-11-9.1 imposes a pleading requirement, not an evidentiary requirement. And because OCGA § 9-11-9.1 constitutes an exception to the general liberality of pleading allowed under the Civil Practice Act, it is to be construed in a manner consistent with the liberality of the Act so long as such a construction does not detract from the purpose of OCGA § 9-11-9.1, which is to reduce the filing of frivolous malpractice suits. Accordingly, plaintiffs are given a wide berth to conform to the statutory requirements, and in ruling on a motion to dismiss based on an allegedly defective affidavit, a court should construe the affidavit most favorably to the plaintiff and all doubts should be resolved in the plaintiff's favor, even if an unfavorable construction of the affidavit may be possible.

*Cantrell v. AU Med. Center*, 358 Ga. App. 41, 44(2) (853 SE2d 137) (2020) (citation modified).

So viewed, the record shows that Kelly is a licensed chiropractor. In August 2022, Coll made an appointment to see Kelly for neck and shoulder pain. Kelly took

---

[1] Although the trial court held a hearing on the motion to dismiss, it did not consider any testimony. Thus, we are not bound to review the trial court's ruling for abuse of discretion. Compare *Hendrix v. Fulton DeKalb Hosp. Auth.*, 330 Ga. App. 833, 836 (769 SE2d 575) (2015).

an X-ray, but a portion of the spine area was obscured by Coll's necklace. Kelly did not repeat the X-ray before treating and manipulating Coll's spine. Coll immediately experienced sharp pain that ultimately required additional medical care.

Coll filed the instant suit against Kelly for negligence and professional negligence, alleging Kelly breached the standard of care for taking and interpreting an X-ray, and that his treatment protocol was the proximate cause of her injury.[2] Attached to the complaint was an affidavit from Dr. Jeremy Royal, a musculoskeletal radiologist. Royal explained that he had been engaged in the active practice of musculoskeletal radiology since 2011 and was familiar with the standard of care for taking and reading X-rays. He opined that Kelly deviated from the standard of care by

[2] Although Coll alleged a claim for negligence, she has not alleged any facts that constitute simple negligence; all of her allegations relate to professional decisions. See, e. g., *Dodge County Hosp. Auth. v. Seay*, 366 Ga. App. 1, 4 (880 SE2d 571) (2022) ("A professional negligence claim calls into question the conduct of the professional in his area of expertise. Administrative, clerical, or routine acts demanding no special expertise fall in the realm of simple negligence. ... [W]e must look to the substance of the action against a medical professional in determining whether the action is one for professional or simple negligence. ... Whether a complaint sounds in ordinary or professional negligence is a question of law for the court to decide." (citation modified)). The trial court dismissed the complaint in its entirety, and Coll makes no argument on appeal regarding her ordinary negligence claim. Thus, she has abandoned any argument that dismissal of that negligence claim was improper. Court of Appeals Rule 25(d)(1); *Grogan v. City of Dawsonville*, 305 Ga. 79, 89(4), n.7 (823 SE2d 763) (2019).

taking only a single X-ray in which the view was obscured, and failing to take additional images to obtain a clear view. According to Royal, portions of the plaintiff's vertebra — specifically, the top and mid section of the C7 vertebral body — were not visible in the X-ray, and Kelly should have obtained another image without the obstruction prior to determining a course of treatment. Royal explained that, since Coll's treatment with Kelly, she has been diagnosed with discitis/osteomyelitis[3] in the obscured area of the vertebrae, and the advanced nature of the infection suggests it was likely present when Kelly examined her. Royal further opined that treatment such as spinal manipulation could have caused the infection to spread, and he believed to a reasonable degree of medical certainty that Kelly's treatment "may have caused or exacerbated the destruction and/or collapse of the disc space at level C6-C7."

Kelly moved to dismiss the complaint on the ground that Royal's affidavit was insufficient to meet the requirements of OCGA § 9-11-9.1 and OCGA § 24-7-702(c).[4]

---

[3] "Vertebral osteomyelitis is a rare infection in your spine." https://my.clevelandclinic.org/health/diseases/22276-vertebral-osteomyelitis (last visited March 21, 2026).

[4] Although Kelly disputed that he actually provided any treatment beyond an initial exam, he stipulated for purposes of the motion to dismiss that he had treated Coll.

Kelly argued that Royal was not trained in chiropractics and was not qualified to discuss the standard of care for chiropractic treatments and procedures. He conceded that Royal could be qualified to address the standard for reading an X-ray.

Following a hearing, the trial court granted the motion to dismiss, finding that Royal was not qualified to give an expert opinion on what a chiropractor should have done under the circumstances. Coll now appeals, arguing that the trial court erred by dismissing the complaint because OCGA § 43-9-16(g) provides that a chiropractor taking and reading an X-ray must be held to the same standard of care as any other doctor, and Royal was qualified to give an opinion as to that standard of care. We agree.

In a medical malpractice case, OCGA § 9-11-9.1(a) requires that the plaintiff "file with the complaint an affidavit of an expert competent to testify, which affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." This requirement applies to malpractice claims against chiropractors. OCGA § 9-11-9.1(g)(5). If the affidavit submitted with the complaint is defective, the complaint must be dismissed for failure to state a claim. See OCGA § 9-11-9.1(e).

In order to qualify as an expert for purposes of giving an affidavit under OCGA § 9-11-9.1, the affiant must also satisfy the requirements of OCGA § 24-7-702. *Bryant v. Okafor*, 367 Ga. App. 629, 630 (887 SE2d 689) (2023). See also OCGA § 24-7-702(e).

> OCGA § 24-7-702(c) sets forth specific competency requirements for experts in professional malpractice actions. OCGA § 24-7-702(c) requires, among other things, that at the time the act or omission is alleged to have occurred, the expert was licensed to practice his or her profession. In medical malpractice actions, the expert must have had actual professional knowledge and experience in the area of practice or specialty in which the opinion is to be given ... The statute also requires, with certain exceptions not applicable here, that the expert be a "member of the same profession" as the defendant.[5]

*Bryant*, 367 Ga. App. at 630-31 (citation modified). See also OCGA § 24-7-702(c)(2)(C)(i).

To determine whether the expert is a "member of the same profession" as the defendant, we look to the categories listed in the statute. Where the statute lists the

---

[5] Kelly did not challenge Royal's qualifications to give an opinion on taking and reading an X-ray, nor did he challenge whether Royal otherwise met the requirements of OCGA § 24-7-702. Kelly's argument was limited to whether Royal was qualified to give an opinion as to chiropractic treatment and whether such treatment caused the injury.

categories of professions separately, we have likewise found them to be different professions. See *Bryant*, 367 Ga. App. at 631(a). For example, we held that a chiropractor was not qualified to give an expert opinion in a case against a physical therapist because the two were not members of the same profession. See *Bacon County Hosp. & Health Sys. v. Whitley*, 319 Ga. App. 545, 549-50 (737 SE2d 328) (2013) (finding the two professions are listed separately under OCGA § 9-11-9.1(g)). On the other hand, experts who are medical doctors are members of the same profession even if they are from different specialties. See *Graham v. Reynolds*, 343 Ga. App. 274, 278(2)(a) (807 SE2d 39) (2017) (cardiologist and emergency room physician are members of the same profession). See also *Russell v. Kantamneni*, 363 Ga. App. 899, 904 (873 SE2d 458) (2022) (a rheumatologist and a psychiatrist are members of the "same profession").

Here, OCGA § 9-11-9.1(g) lists "chiropractors" separately from "medical doctors." OCGA § 9-11-9.1(g)(5), (11). See also OCGA § 43-9-1 et seq. (regulating chiropractic care); OCGA § 43-34-21(3) (doctor of chiropractics is not one of the titles within the definition of "to practice medicine"). Thus, to the extent that Royal opined that Kelly's treatment was below the standard of care or that the chiropractic

treatment likely caused the injury, he is not qualified to give those opinions because he is not a member of the same profession as Kelly. Accordingly, his affidavit was insufficient to qualify him as an expert for purposes of any claims against Kelly arising from chiropractic care.[6] *Whitley*, 319 Ga. App. at 549-50.

Generally, our conclusion would require that we affirm the trial court's dismissal of the complaint. OCGA § 9-11-9.1(e). But here, Coll also offered Royal's expert opinion to show Kelly's decision to treat plaintiff's neck and shoulder was the result of the failure to follow the standard of care in taking and reading the X-ray. And, under OCGA § 43-9-16(g),

> [i]f a chiropractor performs upon a patient any act authorized to be so performed under this chapter but which act also constitutes a standard procedure of the practice of medicine, including … X-rays, under similar circumstances the chiropractor shall be held to the same standard of care as would licensed doctors of medicine who are qualified to and who actually perform those acts under similar conditions and like circumstances.

---

[6] We note that Coll did not amend her complaint with a different affidavit after Kelly filed the motion to dismiss. See OCGA § 9-11-9.1(e); *Hendrix v. Fulton DeKalb Hosp. Auth.*, 330 Ga. App. 833, 838-39 (769 SE2d 575) (2015).

As we have explained, under OCGA § 24-7-702(c)(2), we consider whether the expert has the professional knowledge and experience in the type of practice in which he is rendering an opinion. *Hendrix v. Fulton Dekalb Hosp. Auth.*, 330 Ga. App. 833, 837 (769 SE2d 575) (2015). As Kelly conceded, Royal would be qualified to give an expert opinion concerning whether Kelly's conduct met the standard of care for taking and reading the X-ray.

At the motion to dismiss stage, we must "construe the affidavit most favorably to the plaintiff and all doubts should be resolved in the plaintiff's favor, even if an unfavorable construction of the affidavit may be possible." *Cantrell*, 358 Ga. App. at 44(2). Coll alleged in the complaint that "Kelly's decision to adjust, manipulate, and treat Plaintiff Coll's neck and shoulder was a direct, proximate, and foreseeable result of Dr. Kelly's failure to follow the standard of care for healthcare professionals taking and reading X-rays." And Royal opined that Kelly breached the standard of care by taking an X-ray without removing obstructions and taking only a single image, and he concluded that the infection was likely present at the time the X-ray was taken. On these allegations, and construing the affidavit in the light most favorable to Coll, Royal's affidavit was sufficient to meet the requirements of OCGA §§ 9-11-9.1 and 24-

7-702(c)(2) with respect to his opinion that Kelly breached the standard of care in taking and reading the X-ray.[7]

"Although it is possible that the discovery process will dispel liability on the part of ... the defendant[], the purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling her to recover and capable of withstanding a motion for summary judgment before the defendant need file [his] answer." *Cantrell*, 358 Ga. App. 45(2) (citation modified). We therefore conclude that the trial court erred by granting the motion to dismiss the complaint in its entirety.

*Judgment reversed. Barnes, P. J., and Hodges, J., concur.*

---

[7] We express no opinion as to whether this alleged breach caused Coll's injuries.