A11A0634. WILLIAMS et al. v. BOOKER et al.
A11A0635. MEADOWS REGIONAL MEDICAL CENTER, INC.
v. BOOKER et al.
(712 SE2d 617)

ELLINGTON, Chief Judge.

Pursuant to granted interlocutory appeals, Meadows Regional Medical Center ("the hospital"), Dr. Michael Williams and his medical practice, Williams Medical Care Clinic of Vidalia, P.C., contend that the Superior Court of Toombs County erred in denying their motions for partial summary judgment on the issue of Williams' alcohol addiction in this medical malpractice suit filed by Gloria Booker.[1] We consolidate these appeals for disposition and, for the following reasons, we reverse.

> We conduct a de novo review of the trial court's ruling on summary judgment, viewing the evidence and all reasonable inferences and conclusions drawn from it in a light favorable to the nonmoving party. Summary judgment is appropriate when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. A defendant is entitled to summary judgment if it can demonstrate that there is no evidence to create a jury issue on at least one essential element of the plaintiff's case. A defendant need not affirmatively disprove the plaintiff's case, but may prevail simply by pointing to the lack of evidence. If the defendant does so, the plaintiff cannot rest on his pleadings, but must point to specific evidence that gives rise to a triable issue of fact.

(Punctuation and footnotes omitted.) *Latimore v. City of Atlanta*, 289 Ga. App. 85 (656 SE2d 222) (2008). So viewed, the record shows the

---

[1] Booker's husband, Derek, later joined the suit, asserting a claim for loss of consortium. As his claims are not relevant to this appeal, our references hereafter to "Booker" are references to Gloria Booker only.

following.

This is a suit for medical malpractice arising out of a laproscopic cholecystectomy that Williams performed on Booker on March 29, 2001, at the hospital. During Booker's first post-operative visit on April 6, 2001, Williams observed that she appeared jaundiced and ordered additional tests. Suspecting a bile duct injury, Williams referred Booker to another physician on April 11, 2001. The following day, Booker underwent surgery for a bilateral catheter placement, and the surgeon later removed surgical clips that Williams had placed in Booker's abdomen during her first surgery, some of which had occluded her common bile duct.

On March 28, 2003, Booker filed the instant action contending that Williams violated the standard of care by improperly placing the surgical clips, which caused Booker to suffer a bile duct injury, and in failing to diagnose timely the bile duct injury. Booker also alleged that Williams was addicted to alcohol and that his alcoholism impaired his ability to perform surgery. Booker further alleged that the hospital was aware of Williams' alcohol addiction and violated a duty to disclose Williams' alcohol addiction to her. The appellants moved for summary judgment on the issue of Williams' alcohol addiction, but the trial court denied the motions, finding that material issues of fact remained for jury resolution.

Williams admits that he is an alcoholic. He sought inpatient treatment for alcohol addiction in November and December 1997, then continued with outpatient treatment through July 1998. The hospital became aware of Williams' alcohol addiction during the mid-1990s and was aware that Williams thereafter sought and received treatment for his addiction while on leave from his practice. After being discharged from treatment in 1998, Williams returned to his practice, treated patients at the hospital, and remained sober for over two years. During the two years following his treatment, Williams informed the Composite State Board of Medical Examiners as part of the credentialing process that he had undergone treatment for alcohol abuse and, at the Board's request, entered into a consent agreement that required him to maintain his sobriety.

Williams relapsed and began consuming alcohol again in July or August 2000. He deposed that he drank only at home and that he believed no one at the hospital was aware that he had relapsed until mid-June 2001. He did not report his relapse to anyone at the hospital. However, following a urine test that was positive for alcohol, he admitted to the Composite State Board of Medical Examiners on June 22, 2001, that he had used alcohol during the past ten to twelve months "at the rate of approximately one pint of vodka two to three times per week." On June 19, 2001, the hospital became aware that Williams had relapsed when a nurse smelled an

alcoholic beverage on Williams' person. A few weeks later, Williams returned to inpatient alcohol treatment, continued thereafter in an outpatient program in a half-way house, and then returned home on January 11, 2002. He completed outpatient therapy on February 28, 2002.

Williams deposed that, during the period of his relapse, he did not perform surgery while consuming alcohol, that he believed his performance as a surgeon had not been impacted by his alcohol use, and that he was careful not to drink "around any cases." He deposed that he drank at home, usually on the weekends, and that he did not drink when he was on call or when he had any patient responsibilities. Williams said that he did not drink every day. When asked whether he performed surgery within 24 hours of having a drink, he responded: "[No,] I usually did not drink before my cases."

Booker deposed that, during her time as Williams' patient, she never suspected that he was an alcoholic or that he was under the influence of alcohol. Booker took the depositions of 16 people who were hospital administrators, nurses, or staff and none gave testimony indicating that Williams was using alcohol, was under the influence of alcohol, or was otherwise visibly impaired during March and April 2001, the time period during which Williams was treating Booker. Booker has not included in the record the deposition of her expert witness, or any evidence from that witness suggesting that he had information from any source that would give him reason to believe that Williams was under the influence of alcohol during Booker's surgery or treatment.

## Case No. A11A0634

1. In her complaint, Booker averred that Williams was an alcoholic, that he was under the influence of alcohol when he treated her, and that his addiction impaired his ability to practice medicine. Williams moved for summary judgment on Meadows' claim "relating to Dr. Williams' alcohol addiction," and the court denied it, finding that material issues of fact existed with respect to whether Williams was intoxicated at the time he operated on Booker. On appeal, Williams challenges the court's order denying his motion for summary judgment on the issue of Williams' alleged alcohol use at the time of Booker's treatment as well as the admissibility of that evidence.

(a) To the extent that Booker is asserting that Williams' alcoholism at the time of the surgery created an independent claim or issue of negligence for the jury, we reject that proposition. The mere fact of a physician's alcohol or drug addiction or use at the time of the alleged malpractice does not create, in and of itself, a separate issue

or claim of medical malpractice. Rather, "it is only when that alcoholism translates into conduct falling below the applicable standard of care that it has any relevance." *Ornelas v. Fry*, 151 Ariz. 324, 328 (727 P2d 819) (1986); *Watson v. Chapman*, 343 S.C. 471 (540 SE2d 484) (2000) (accord). Therefore, to the extent the trial court denied Williams' motion for summary judgment on any such independent claim, the court's order is reversed.

(b) In medical malpractice suits, evidence of a physicians' alcohol or drug use or addiction is relevant and admissible only when there is evidence from which the jury may infer that the physician was under the influence of alcohol or drugs at the time of the allegedly negligent treatment. See *Wheeler v. Stewart*, 234 Ga. App. 714, 714-716 (507 SE2d 540) (1998) (The trial court did not abuse its discretion in excluding evidence of the physician's abuse of mood-altering drugs.); *Whorton v. Boatright*, 233 Ga. App. 369, 369-371 (504 SE2d 216) (1998) (The trial court did not abuse its discretion in excluding evidence of alcohol use by the physician two days after treatment and evidence of the excessive or improper use of alcohol by the physician on other occasions over ten years before and two years after the alleged malpractice.). Absent a factual basis linking Williams' alcohol addiction or use to the claimed act of medical malpractice, the evidence is inadmissible because it is both irrelevant and highly prejudicial. See *Wheeler v. Stewart*, 234 Ga. App. at 715-716.

"Questions of relevancy are generally matters within the trial court's discretion[.]" Id. at 715-716.

> An abuse of discretion is generally the only basis for overruling a trial court's judgment as to evidence's relevancy. The existence of such an abuse may be measured by weighing the challenged evidence's probative value against the risk that its admission misled the jury or created a substantial danger of unfair prejudice or confusion.

(Citations omitted.) *Key v. Grant*, 238 Ga. App. 818, 819 (2) (520 SE2d 277) (1999).

In the instant case, although it is undisputed that Williams is an alcoholic and that he consumed a significant amount of alcohol during the period of his relapse, there is no evidence that Williams was under the influence of alcohol when he performed Booker's surgery. Williams deposed that he did not drink before or during surgery or when he had patient responsibilities, and neither Booker nor any hospital employee testified to the contrary. Nevertheless, the trial court found, based upon Williams' general alcohol use during the period of his relapse and his deposition testimony that he "usually" did not drink within 24 hours of surgery, that "he could

have consumed alcohol within [the 24-hour] time frame of performing [Booker's] surgery and could have, therefore, been under the influence at that time." Of course, based on these same facts, it is also equally possible that Williams was not intoxicated. Thus, the court's conclusion is speculation rather than a reasonable inference from the facts. See *Denson Heating & Air Conditioning Co. v. Oglesby*, 266 Ga. App. 147, 148 (596 SE2d 685) (2004) (a reasonable inference cannot be based on mere conjecture or probability, or on evidence that is too uncertain or speculative). Such speculation is insufficient as a factual basis for demonstrating that Williams was under the influence of alcohol at the time of the surgery such that his alcohol use had any probative value on the issue of his alleged negligence. That Williams was a relapsed alcoholic, however, is highly prejudicial and could create a substantial risk that the jury would be confused, misled, or prejudiced against Williams. See *Wheeler v. Stewart*, 234 Ga. App. at 716. Consequently, the trial court abused its discretion in finding that evidence of Williams' alcohol addiction and use was admissible at trial.

### Case No. A11A0635

2. In her complaint, Booker made the following averments with respect to the hospital: the hospital knew that Williams was addicted to alcohol; the hospital had a duty to inform Booker of Williams' addiction; and the hospital was negligent in "failing to inform" Booker of Williams' addiction. This failure-to-inform claim is the sole direct negligence claim Booker has averred against the hospital.[2]

Booker has cited to no authority, nor have we found any, holding that a hospital has a duty to inform a physician's patient that the physician is an alcoholic, has abused alcohol in the past, or has been treated for alcohol dependence. It is axiomatic that an "essential element of a tort claim is the existence of a duty owed by the defendant to the purported plaintiff." *Oswell v. Nixon*, 275 Ga. App. 205, 207 (1) (620 SE2d 419) (2005).

The Supreme Court of Georgia has held that a physician has no duty to inform a patient of his use of and dependence upon the illegal drug cocaine. In *Albany Urology Clinic, P.C. v. Cleveland*, 272 Ga.

---

[2] Booker did not aver in her complaint that the hospital was negligent in granting Williams hospital privileges, in allowing him to serve on the staff, or in failing to take measures to ensure that he maintained his sobriety, as the trial court seems to imply in its order. Because these allegations are not elements of the plaintiff's failure-to-disclose claim, they are immaterial to our de novo review of the trial court's decision to deny summary judgment. See *MEA Family Investments., L.P. v. Adams*, 284 Ga. 407, 410 (667 SE2d 609) (2008) ("Summary judgment is proper when no genuine issue of *material* fact remains. Assuming, without deciding, that a factual dispute may remain as to some *immaterial* issues, summary judgment was properly granted to Appellee.") (emphasis supplied).

296, 296-297 (528 SE2d 777) (2000), the Court explained that physicians have no common law or statutory duty to volunteer information to their patients of "unspecified life factors which might be subjectively considered to adversely affect the professional's performance." The Court held that the failure to make such a disclosure could not "provide a basis for a fraud claim, nor [could] it vitiate a patient's consent so as to authorize an action for battery." Id. Likewise, absent some duty to disclose his alcoholism, Williams's failure to inform Booker of the same provides no basis for her failure-to-disclose claim. See id. Moreover, if the physician does not have a duty to disclose such matters, we see no basis for imposing that duty upon the hospital. As this Court explained in *Parr v. Palmyra Park Hosp.*, 139 Ga. App. 457, 459-460 (228 SE2d 596) (1976),

> [s]urely if the physician who is treating the patient, who has responsibility for seeing that he is properly treated . . . , and who is the only one who has personal contact with the patient[,] is required to do no more than inform the patient of [certain informed consent information], the hospital, which deals only with the doctor[,] . . . is under no greater obligation or higher standard of disclosure. To require a hospital to contact a patient to discuss the risks of a surgical procedure . . . would be a presumptuous invasion of the province of the physician, on whom rests the responsibility of the patient's welfare.

Finally, pretermitting whether a hospital has a duty to inform a patient who is being treated at the hospital that the patient's physician is *currently* abusing alcohol or drugs, there is no evidence in the instant case that, at the time of Booker's surgery, the hospital knew or had any reason to suspect that Williams had relapsed and had been using alcohol. See Division 1, supra. Consequently, the trial court erred in denying summary judgment to the hospital on this failure-to-inform claim.

*Judgment reversed. Miller, P. J., and Doyle, J., concur.*

DECIDED JUNE 21, 2011 — ▮▮▮▮▮▮▮▮

*Carlock, Copeland & Stair, Wade K. Copeland, Lee P. Gutschenritter*, for appellants (case no. A11A0634).
*Martin Snow, John C. Daniel III, Richard A. Epps, Jr., Stuart E. Walker*, for appellant (case no. A11A0635).

*Smith & Jenkins, Wilson R. Smith*, for appellees.