**THIRD DIVISION**
**ELLINGTON, P. J.,**
**BETHEL, J., and SENIOR APPELLATE JUDGE PHIPPS**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**June 1, 2018**

# In the Court of Appeals of Georgia

A18A0277. HOLMES et al. v. LYONS et al.                    PH-010

PHIPPS, Senior Appellate Judge.

Bonnie Holmes appeals the dismissal of her complaint for failure to file a sufficient expert affidavit in support of her medical malpractice claim pursuant to OCGA § 9-11-9.1, and for failure to state a claim and as being barred under Georgia law with respect to her separate claims for fraud, battery, and negligent misrepresentation. For the reasons set forth more fully below, we reverse.

"A motion to dismiss based upon the lack of a sufficient expert affidavit is a motion to dismiss for failure to state a claim under OCGA § 9-11-12 (b) (6)." *Ziglar v. St. Joseph's/Candler Health System, Inc.*, 341 Ga. App. 371, 371 (800 SE2d 395) (2017) (citation and punctuation omitted). "We review a trial court's ruling on a motion to dismiss de novo, viewing all well-pled allegations in the complaint as true."

*Hobbs v. Great Expressions Dental Centers of Ga.*, 337 Ga. App. 248, 248 (786 SE2d 897) (2016).

So viewed, the complaint alleges that on June 23, 2015, Thomas Lyons, M.D., performed gynecological surgery[1] on Holmes at Rockdale Medical Center, owned and operated by Rockdale Hospital, LLC (collectively, "Rockdale Hospital"). As a result of the surgery, Holmes suffered a right distal ureteral injury and uterovaginal fistulas. In November 2016, Holmes filed suit against Dr. Lyons, his employer Rockdale Physician Practices, LLC d/b/a Advanced Gynecology Associates ("Rockdale Physician Practices"), and Rockdale Hospital (collectively, the "Defendants"), alleging claims of medical malpractice, fraud, negligent misrepresentation, battery, punitive damages, as well as a claim of loss of consortium on behalf of her husband, Jeremy Holmes. Holmes also brought a claim against Rockdale Physician Practices for negligent hiring, supervision, and retention, and claims for negligent credentialing and negligence per se against Rockdale Hospital.

In her complaint, Holmes alleged that Dr. Lyons was not physically capable of performing the June 23 surgery, and he failed to disclosed physical impairments that

---

[1] The surgery was alleged to include a hysterectomy, exploratory laparoscopy, adhesiolysis, uteterolysis, laparoscopic total hysterectomy, and cystoscopy.

negatively affected his motor skills and placed her at increased risk of complications, including ureteral injury and uterovaginal fistulas. In support of her claim, Holmes highlighted that in 2010, Dr. Lyons had sought total and residual disability benefits under two separate disability insurance policies. After being denied benefits, Dr. Lyons filed suit against both insurers in 2011. Attached to Dr. Lyons's complaint was a functional capacity evaluation report prepared by Marc. A. Yeager, MPT, which opined that Dr. Lyons's "functional capabilities do not match the physical demand requirements of his job related to be a Gynecological Surgeon due to decreased right and left lower quarter weight bearing and decreased right- and left-hand gross and fine motor coordination." In his suit, Dr. Lyons described that: (1) in 2002, he became "residually disabled" due to a total knee replacement which affected his ability to stand and perform surgery; (2) his right thumb has a joint that needed to be replaced and "affects him from a surgical standpoint"; (3) in 2009, he lost vision in his left eye, which affected his depth perception; and (4) in 2011, he suffered a stroke, which resulted in neurological problems, including tremors and other issues that impacted his fine motor skills. Holmes contended that Dr. Lyons was impaired by the above-referenced disabilities when he performed gynecological surgery on June 23, 2015, which resulted in a preventable injury to Holmes's ureter and other complications.

Holmes further alleged that Dr. Lyons never informed her of his diminished motor skills, vision issues, or difficulties in weigh bearing, and never advised her that her risk of complications would be reduced if another gynecological surgeon, without the same physical limitations, had performed the surgery.

Holmes attached an expert affidavit to her complaint authored by Kelly M. Kasper, M.D., a board certified gynaecologist, whose competency is not in dispute.[2] In pertinent parts, Dr. Kasper's affidavit stated that Dr. Lyons "breached the standard of care in the following ways": (1) he performed the surgical procedures on Holmes "even though he was not physically capable of performing them in a manner that was safe"; (2) he performed the surgical procedures on Holmes "even though he was not physically capable of performing them in a manner that did not put . . . Holmes at increased risk for complications, including but not limited to ureteral injury and uterovaginal fistulas;" (3) he failed to inform Holmes of his "identified and admitted disabilities and the likelihood that they would put her at risk for and cause her complications, including ureteral injury and uterovaginal fistulas;" (4) he failed to inform Holmes of "practical alternatives," including that another physician, without

_____

[2] Dr. Kasper initially submitted an affidavit on August 18, 2016, which she supplemented with two amended versions on August 30, 2016 and December 6, 2016.

4

the "identified and admitted disabilities" could perform the surgery, "which would not carry with it the likelihood that she would be at risk for and suffer complications, including ureteral injury and uterovaginal fistulas;" and (5) he failed to perform the surgery on Holmes "in a manner that would avoid complications, including but not limited to ureteral injury and uterovaginal fistulas." Dr. Kasper concluded that Dr. Lyons's cumulative failures "caused Bonnie Holmes' complications of right distal ureteral injury and uterovaginal fistula." In a second amended affidavit, Dr. Kasper added, "the complications that Bonnie Holmes experienced secondary to the June 23, 2015 [p]rocedures, including, but not limited to, ureteral injury and uterovaginal fistulas, were a direct result of [Dr. Lyons] physical impairments" and the "complications were secondary to deficient surgical technique related to at least Dr. Lyons' 'decreased right and left lower quarter weight bearing and decreased right- and left-hand gross and fine motor coordination.'"

The Defendants filed separate motions to dismiss. The trial court granted the motions to dismiss, finding, as relevant to this appeal, that: (1) Holmes's medical malpractice claim was subject to dismissal because Dr. Kasper's expert affidavit failed to specify at least one negligent act or omission committed by Dr. Lyons; and (2) under Georgia law, a physician's failure to disclose to a patient "negative life

5

factors," which might adversely affect their professional performance could not serve as a basis for Holmes's separate claims of fraud, negligent misrepresentation, and battery. The court also dismissed Holmes's claims against Rockdale Physician Practices and Rockdale Hospital as "derivative" of Holmes's meritless substantive claims. Holmes then filed the instant appeal.

1. In her first enumeration of error, Holmes contends that the trial court erred in dismissing her medical malpractice claim for failure to file a sufficient expert affidavit. Pursuant to OCGA § 9-11-9.1 (a), a plaintiff who files professional negligence claims against "(1) [a] professional licensed by the State of Georgia and listed in subsection (g) of this Code section; [or] (3) [a]ny licensed health care facility alleged to be liable based upon the action or inaction of a health care professional licensed by the State of Georgia and listed in subsection (g) of this Code section," must file an expert affidavit with their complaint. Further, the statute also plainly provides that the expert's "affidavit shall set forth specifically at least one negligent act or omission claimed to exist and the factual basis for each such claim." OCGA § 9-11-9.1 (a). Unlike OCGA § 9-11-56, which imposes an evidentiary requirement in the context of summary judgment on the merits, OCGA § 9-11-9.1 merely imposes an initial pleading requirement on the plaintiff in a malpractice action. *Robinson v.*

*Starr*, 197 Ga. App. 440, 441 (2) (398 SE2d 714) (1990). Accordingly, an expert affidavit which would be insufficient to satisfy the evidentiary standards of OCGA § 9-11-56 may nevertheless be sufficient to satisfy the pleading standards of OCGA § 9-11-9.1. *0-1 Doctors Mem. Holding Co. v. Moore*, 190 Ga. App. 286, 287 (1) (378 SE2d 708) (1989). The sufficiency of the expert affidavit determines whether the complaint for malpractice is "subject to dismissal for failure to state a claim[.]" OCGA § 9-11-9.1 (e). "A Section 9-11-9.1 affidavit should be construed most favorably to the plaintiff and all doubts should be resolved in plaintiff's favor, even if an unfavorable construction of the affidavit may be possible." *Crook v. Funk*, 214 Ga. App. 213, 214 (1) (447 SE2d 60) (1994) (citation and punctuation omitted).

Here, the Defendants contend that Dr. Kasper's affidavit, as amended, was fatally defective because it failed to set forth at least one negligent act or omission claimed to exist. They highlight that the affidavit summarily concluded that Dr. Lyons utilized a deficit surgical technique because Holmes experienced complications, without providing any details on how Dr. Lyons was negligent in performing the surgery. See *Hawkins v. OB-GYN Assocs., P.A.*, 290 Ga. App. 892, 894 (1) (660 SE2d 835) (2008) ("[T]he doctrine of res ipsa loquitur does not apply in a malpractice case. An intended result does not raise an inference of negligence.").

7

It is true that an expert affidavit must include at least one specific negligent act or omission giving rise to a malpractice claim. See, e.g., *Porquez v. Washington*, 268 Ga. 649, 650-651 & n. 1 (1) (492 SE2d 665) (1997) (finding an expert affidavit set forth at least one specific "factually-based act of negligence" by stating the defendants failed to monitor the use of an emergency medical device); *Vitner v. Miller*, 223 Ga. App. 692, 694 (2) (479 SE2d 1) (1996) (finding an affidavit to be legally sufficient where the expert averred that a physician's "failure to complete the two suction abortions constituted negligence"); *Crook*, 214 Ga. App. at 214 (1) (concluding that an expert affidavit met the minimum requirements by referencing multiple acts by the defendants, including their failure to diagnose an aneurysm and ordering a treadmill stress test, despite the patient's poor physical condition and high blood pressure).

In this case, however, Dr. Kasper's affidavit described that Dr. Lyons's act of performing the set of six surgical procedures on Holmes on the date in question despite his known physical limitations "breached the standard of care." See *Bowen v. Adams*, 203 Ga. App. 123, 124 (416 SE2d 102) (1992) ("The negligent act 'claimed to exist' in the instant case is appellee's performance of 'an unnecessary operative procedure' upon appellant."). Specifically, Dr. Kasper opined that Dr. Lyons: (1)

8

performed the surgery despite his physical limitations, (2) failed to inform Holmes of his disabilities, and (3) employed a "deficient surgical technique," which arose from his physical impairments. Dr. Kasper further averred that the complications suffered by Holmes, "including, but not limited to, ureteral injury and uterovaginal fistulas, were a *direct result* of [Dr. Lyons's] physical impairments[,]" and that the "complications were secondary to *deficient surgical technique*" due to Dr. Lyons's "decreased right and left lower quarter weight bearing and decreased right- and left-hand gross and fine motor coordination." Although an unfavorable construction of this affidavit may be possible, construing it most favorably for Holmes and resolving all doubts in her favor, as we must on a motion to dismiss, the trial court could not conclude that Dr. Kasper's affidavit "discloses with certainty that [Holmes] would not be entitled to relief under any state of provable facts." *Graham v. Reynolds*, 343 Ga. App. 274, 282 (3) (807 SE2d 39) (2017).

Nowhere in the instant affidavit did Holmes's expert specifically assert that Dr. Lyons's performance of the surgical procedure resulted in the cut to Holmes's ureter, as Holmes alleges in her brief. However, "OCGA § 9-11-9.1 does not require an affiant to specifically opine that the act constituted negligence." *Graham*, 343 Ga. App. at 281 (3). Holmes cannot be required to submit an expert affidavit which

9

unequivocally demonstrates the evidentiary merits of her claim unless and until the Defendants move for summary judgment and submit evidence demonstrating that Holmes's claim lacks merit. See *Bowen*, 203 Ga. App. at 124 ("The purpose of OCGA § 9-11-9.1 is to reduce the number of frivolous malpractice suits being filed, not to require a plaintiff to prove a prima facie case entitling him to recover and capable of withstanding a motion for summary judgment before the defendant need file his answer.") (citation omitted). It follows that the trial court erred in granting the Defendants' respective motions to dismiss with regards to Holmes's medical malpractice claim.

Given our conclusion that the trial court erred in dismissing Holmes's substantive claims for professional malpractice against the Defendants, we also find that the court erred in dismissing the claim for loss of consortium filed by Jeremy Holmes. See *Evans v. Rockdale Hosp., LLC*, No. A18A0233, 2018 WL 1753820, at *8 (2) (Ga. Ct. App., Apr. 12, 2018) (a spouse's claim for loss of consortium stems from the right of the other spouse to recover for his or her injuries). Likewise, the trial court erred in dismissing Holmes's claims of negligent hiring, supervision, and retention against Rockdale Physician Practices. See *City of Kingsland v. Grantham*, 342 Ga. App. 696, 699 (805 SE2d 116) (2017) ("claims based upon negligent hiring,

supervision, and retention of an employee are derivative of the underlying tortious conduct of the employee") (citation and punctuation omitted). The court also erred in dismissing Holmes's claims against Rockdale Hospital, as these claims are dependent on a legally sufficient claim of medical malpractice against a physician. *Ladner v. Northside Hosp.*, Inc., 314 Ga. App. 136, 142-143 (723 SE2d 450) (2012).

2. In her next enumeration of error, Holmes argues that given Dr. Lyons's failure to disclose his admitted ongoing physical disabilities that impacted his surgical abilities, the trial court erred in dismissing her separate claims for fraud, negligent misrepresentation, and battery for failure to state a claim and as being barred under Georgia law. We agree.

In this case, the Defendants contend that, absent an inquiry by Holmes prior to surgery, Dr. Lyons had no duty to voluntarily disclose his possible physical limitations because this is not listed as a specific category of information in Georgia's informed consent statute, OCGA § 31-9-6.1 (a).[3] See *Albany Urology Clinic, P.C. v.*

---

[3] The implied consent statute's mandatory disclosures include: (1) the patient's diagnosis requiring the proposed procedure; (2) the nature and purpose of the procedure; (3) the generally recognized and material risks of "infection, allergic reaction, severe loss of blood, loss or loss of function of any limb or organ, paralysis or partial paralysis, paraplegia or quadriplegia, disfiguring scar, brain damage, cardiac arrest, or death" associated with the procedure; (4) the likelihood of the procedure's success; (5) the practical, recognized and accepted alternatives to the procedure; and

11

*Cleveland*, 272 Ga. 296, 298-299 (1) (528 SE2d 777) (2000). The Georgia Supreme Court has explained that "[b]ecause OCGA § 31-9-6.1 is in derogation of the common law rule against requiring physicians to disclose medical risks to their patients, it must be strictly construed and cannot be extended beyond its plain and explicit terms." Id. at 299 (1).

> [N]either the common law nor the Code impose a duty upon physicians or any other professional to disclose personal life factors which might adversely affect their professional performance. Hence, the failure to make such disclosure cannot be a basis for either a fraud or battery claim.

Id. at 303 (5). But *Albany* does not stand for the proposition that a physician never has a duty to disclose negative information about his personal life to patients. Rather, it stated that "failure to make disclosures that are not required [under the Informed Consent Doctrine] cannot give rise to an independent cause of action" from a malpractice claim. Id. at 300 (2). Notably, the Court explained that "obtaining consent for medical treatment by an artifice that is *directly related* to the subject matter of the professional relationship—i.e.: diagnoses, treatments, procedures—*may* result in an

---

(6) the patient's prognosis if the proposed procedure is rejected. See OCGA § 31-9-6.1 (a) (1)-(6).

12

unlawful touching that supports a battery claim." Id. at 301 (3) (emphasis added). In *Albany*, the Supreme Court declined to apply the informed consent statute to the facts of that case, in which a physician's drug use was at issue in a patient's suit alleging professional negligence, battery and fraudulent concealment of illegal cocaine use. Id. at 301 (3). Specifically, the Court highlighted there was no evidence that the "physician was impaired or affected by the negative personal life factor at the time consent was obtained and treatment was rendered." Id.

The instant case appears distinguishable. Viewed in Holmes's favor, as we must on a motion to dismiss,[4] the complaint could be read to adequately plead claims

---

[4] Notably, in *Albany* — a case heavily cited by the Defendants in favor of dismissal of Holmes's claims of battery, fraud, and negligent misrepresentation — the plaintiff's claims were tried before a jury. *Albany*, 272 Ga. at 297. In that case, after the jury ruled in favor of the defendant on the malpractice claim, but returned plaintiff's verdicts on the claims of fraudulent concealment and misrepresentation based on the physician's alleged drug use, the trial court granted the defendant's motion for judgment notwithstanding the verdict because the plaintiff's fraud claim failed as a matter of law. See also *Williams v. Booker*, 310 Ga. App. 209, 209 (712 SE2d 617) (2011) (physician and his medical practice sought interlocutory review to appeal the denial of their motions for partial summary judgment on the issue of whether the physician had a duty to inform a patient about his alcohol addiction); *Hooks v. Humphries*, 303 Ga. App. 264, 264-266 (692 SE2d 845) (2010) (appeal of grant of partial motion for summary judgment against plaintiff's claims as to breach of fiduciary duty and ordinary negligence based on physician's failure to disclose reasons he no longer delivered babies); *Blotner v. Doreika*, 285 Ga. 481, 481-482 (1) (678 SE2d 80) (2009) (plaintiff appealed following a jury verdict in favor of chiropractor, asserting that the chiropractor failed to inform him about risks or

13

for fraud,[5] battery,[6] and negligent misrepresentation. The crux of Holmes's claim is that (1) Dr. Lyons failed to inform her of his known disabilities prior to the surgery; (2) Dr. Lyons's known physical limitations caused him to perform the surgery in a deficient manner; and (3) Holmes experienced complications, including a right distal ureteral injury and uterovaginal fistulas, as a direct result of the surgery. Holmes put forth specific allegations, including that Dr. Lyons: (1) was impaired by multiple disabilities when he performed gynecological surgery on June 23, 2015, which resulted in a preventable injury to Holmes's ureter and other complications; (2) never informed her of his diminished motor skills, vision issues, or difficulties in weigh bearing; and (3) never advised her that her risk of complications would be reduced if another gynecological surgeon, without the same physical limitations, had performed the surgery. Based on the foregoing, the trial court could not have said

_____

treatment alternatives prior to performing a neck adjustment).

[5] See *Albany*, 272 Ga. at 300 (2) n. 14 ("the successful pursuit of a fraud claim, even one within the professional context, requires a showing of an intention to deceive").

[6] A claim for medical battery arises when a patient's consent to a procedure is obtained by "fraudulent misrepresentations of material facts" in obtaining that consent. OCGA § 31-9-6 (d); *Lloyd v. Kramer*, 233 Ga. App. 372, 375 (1) (503 SE2d 632) (1998).

with certainty at this stage in the proceeding that Holmes "will be unable to prove any set of facts in support of [her] claim that would entitle [her] to relief." *Estate of Shannon v. Ahmed*, 304 Ga. App. 380, 384 (1) (696 SE2d 408) (2010) (reversing grant of motion to dismiss with respect to plaintiff's adequately pled claims for fraud, battery, and conspiracy). Accordingly, we reverse the trial court's dismissal of Holmes's claims for fraud, battery, and negligent misrepresentation.

3. Finally, Holmes asserts that the trial judge erred by not recusing herself sua sponte based on an apparent financial conflict of interest with respect to Rockdale Hospital. We need not address this issue because the record reflects that Holmes failed to raise it in the trial court or to request recusal below. See *Wilcher v. Way Acceptance Co.*, 305 Ga. App. 868, 871 (5) (700 SE2d 876) (2010) (where recusal issue was not raised in the trial court, claim was not properly before appellate court).

*Judgment reversed. Ellington, P.J., concurs. and Bethel, J., concurs in Divisions 1 and 3, and dissents in Division 2.*

**\* DIVISION 2 OF THIS OPINION IS PHYSICAL PRECEDENT ONLY, COURT OF APPEALS RULE 33.2 (a).**

A18A0277. HOLMES et al. v. LYONS et al.

BETHEL, Judge, concurring in part and dissenting in part.

While I concur in Divisions 1 and 3 of the majority's opinion, I must respectfully dissent as to Division 2. In Division 2, the majority distinguishes *Albany*[1] and finds that the trial court wrongly dismissed Holmes's claims for fraud, battery, and negligent misrepresentation because Holmes's allegations clear the relatively low hurdle set for complaints on a motion to dismiss. I do not agree with the majority's interpretation of *Albany* and would affirm the trial court's dismissal of these claims.

As the majority correctly notes, the Georgia Supreme Court stated in *Albany* that

> neither the common law nor the Code impose a duty upon physicians or any other professional to disclose personal life factors which might adversely affect their professional performance. Hence, the failure to make such disclosure cannot be a basis for either a fraud or battery claim.

---

[1] 272 Ga. 296 (528 SE2d 777) (2000).

272 Ga. at 303 (5).

Despite this broad pronouncement, the majority relies upon dicta in the opinion stating that "obtaining consent for medical treatment by an artifice that is directly related to the subject matter of the professional relationship – i.e.: diagnoses, treatments, procedures – may result in an unlawful touching that supports a battery claim." *Id.* at 301 (3). I do not find Dr. Lyons's physical limitations to be "directly related to the subject matter of the professional relationship – i.e.: diagnoses, treatments, [or] procedures[.]" Thus, I believe Holmes is barred from asserting independent causes of action based on Dr. Lyons's failure to disclose those physical limitations.